781 So.2d 257 (1999)
Casey A. McWHORTER
v.
STATE.
CR-93-1448.
Court of Criminal Appeals of Alabama.
August 27, 1999.
Rehearing Denied December 3, 1999.
*264 James Radford Berry, Albertville; Thomas Mitchell, Albertville; and Randall *265 Scott Susskind, Montgomery, for appellant.
Bill Pryor, atty. gen., and Jack W. Willis, asst. atty. gen., for appellee.
McMILLAN, Judge.
The appellant, Casey A. McWhorter, was convicted of capital murder for the intentional murder of Edward Lee Williams during the course of committing a robbery, see § 13A-5-40(a)(2), Ala.Code 1975. A sentencing hearing was held before the jury and an advisory verdict of death was returned by vote of 10-2. Thereafter, following another sentencing hearing, the trial court sentenced the appellant to death.
In its sentencing order, the trial court made the following findings, properly summarizing the facts of the crime:
"The court finds beyond a reasonable doubt that approximately three weeks before February 18, 1993, the 18-year-old defendant conspired with 15 and 16 year old codefendants (the 15-year-old codefendant being the son of the victim) to kill the victim in order to rob him of a substantial sum of money and to obtain other property from his home. This conspiracy was discussed from time to time until February 18, 1993. On that date a fourth party, who was aware of the plot, dropped the defendant and the 16-year-old codefendant off on a highway a few blocks from the victim's home at about 3:00 p.m. The fourth party and the 15-year-old son of the victim rode around until they met the defendant and the other codefendant at a pre-arranged spot at 8:00 o'clock that evening.
"The defendant and the 16-year-old proceeded on foot to the victim's home and let themselves in the unlocked empty house. They knew that the victim was not expected home for approximately three to four hours. They spent this three- to four-hour period of time in the home going through it, gathering up various items that they wanted to keep and making silencers for two .22 rifles which were there in the home. One silencer was made out of a plastic jug and filled with napkins and attached to the rifle by duct tape. The other was made by wrapping a pillow around the barrel of the second rifle and holding it in place with duct tape and electrical wire. The rifles were `test-fired' into a mattress to see if the silencers were accomplishing the desired effect. When the victim arrived home, he first saw the 16-year-old, grabbed the rifle he was holding and began to struggle over it. At that point, the defendant fired the first shot into the victim's body. Between the two conspirators on the scene, the victim was shot at least 11 times. After the victim was down on the floor, the defendant fired at least one more round into his head to assure that he was dead. They took his wallet and various other items from the home and left in the victim's pickup truck. They met the other two parties at the prearranged spot, took the victim's truck out into the woods and stripped it. The spoils were divided between the four individuals. The toxicologist testified that the victim died of multiple gunshot wounds, there being 11 entrance wounds and 2 exit wounds. The aorta and another major blood vessel were pierced, causing approximately half a gallon of blood to accumulate in the chest cavity and at least one bullet was removed from the brain.
"The defendant's guilt was evidenced not only by his confession but by the testimony of the fourth party who drove the defendant to the area near the victim's home and met him again at 8:00 p.m. and by the testimony of a friend to *266 whose home the defendant carried part of the spoils and to whom the defendant confessed the substance of his guilt. All of the physical evidence was consistent with the above account."

I.

A.
The appellant argues that the trial court failed to instruct the jury on any lesser included offenses to capital murder, and that its failure to do so violated his right to a fair trial. The appellant specifically argues that the jury should have been instructed on the lesser included offenses of manslaughter, felony murder, and intentional murder. The appellant argues that the jury could have reasonably found that the appellant was unable to form the requisite intent to commit the murder because, he says, there was extensive evidence that he was under the influence of alcohol on the day of the offense. The appellant makes no argument as to why intentional murder could have constituted a lesser included offense in the present case.
The evidence presented concerning the circumstances of the offense indicates that the appellant either was guilty of capital murder or was not guilty. The trial court, in charging the jury on the intent element of capital murder, informed it that, if it concluded that the appellant was voluntarily intoxicated so that he was unable to form the necessary intent to rob, then the appellant could not be convicted of capital murder. However, the evidence clearly indicated that this offense was carefully planned and was carried out according to the plans. The appellant and his accomplice laid in wait and, while at the victim's home, manufactured two homemade silencers for their weapons. The weapons were test-fired to ensure that they were in working order and, thereafter, the murder was meticulously performed. Following the offense, the appellant and his accomplice gathered certain of the victim's possessions, placed them in the victim's truck, and drove this truck to a previously arranged meeting place in a secluded area. There, the victim's property was divided and any evidence was disposed of. The appellant took his portion of the property and concealed it, along with the weapons, at the home of a friend.
Marcus Carter testified on direct examination that, when he got together with the appellant on the night of the offense, there was no indication that the appellant had been drinking, was intoxicated, or was under the influence of any substance. He further testified that, he drove the automobile on the night of the offense and that during the time that he was with the appellant before the appellant got out of his car, the appellant did not drink or take any drugs. Moreover, he testified that when he met the appellant again at the high school following the offense, the appellant did not appear to have been drinking, to have been intoxicated, or to have been under the influence of any drugs or alcohol.
The record indicates that the appellant was arrested the day after the offense, after having been located at the Boaz-Albertville Hospital. The appellant had been taken to the hospital after allegedly attempting to commit suicide by ingesting pills and alcohol. However, there was no direct evidence that the appellant had taken an overdose or what the ingested substance might have been. During the trial, an investigating officer, Detective Maze, testified that he located the appellant at the Boaz-Albertville Hospital, to which defense counsel objected on the basis of relevancy and on the basis that the testimony was overly prejudicial. When asked in which area of the hospital the appellant *267 had been located, defense counsel again objected on grounds of prejudice and relevancy. The officer testified that the appellant was in intensive care. There was no further testimony concerning the appellant's condition or any specifics concerning the reason for his admission to the hospital. The detective subsequently did testify that the appellant was in an intensive care unit and that he was attached to certain monitoring equipment, but that he was capable of carrying on a conversation and he appeared to understand what was transpiring. In his statement to the police, the appellant indicated that he had difficulty remembering the offense because he was "drunk" at the time. The record indicates that the trial court charged the jury on voluntary intoxication, as well as its effect on the charge of capital murder. Thus, the appellant argues that the jury should have been charged on manslaughter as a lesser included offense to capital murder.
The record indicates that during the charge conference defense counsel objected to the trial court's refusal to instruct the jury on the lesser included offense of manslaughter, citing Fletcher v. State, 621 So.2d 1010 (Ala.Cr.App.1993), and acknowledging that although Fletcher dealt with the ingestion of cocaine, the present case dealt with the alleged ingestion of alcohol. However, the trial court noted that the only evidence tending to suggest any intoxication came from the appellant's statement; it refused to give the charge.
In Hutcherson v. State, 677 So.2d 1174, 1175 (Ala.Cr.App.1994), the appellant had argued that the trial court erred in failing to instruct the jury on manslaughter where the trial court had given the jury an instruction on intoxication. The appellant in Hutcherson also cited Fletcher v. State, supra, in support of his argument. However, in Hutcherson, this Court held that it was not plain error for the trial court to fail to give a manslaughter charge when it had given a charge on intoxication. One of the reasons given for this determination was based on the evidence at trialthere had been no indication that the appellant was so intoxicated that he could not form the necessary intent, despite his statement that he had ingested drugs and alcohol before the murder. This Court stated:
"[T]he evidence of the appellant's intoxication was the appellant's statement that he had taken five Valiums and had drunk alcohol before the murder. There is absolutely no evidence in the record that shows when prior to the murder these intoxicants were ingested. Also, the appellant's mother, who picked the appellant up on Moffatt Road after the murder, when asked if the appellant appeared intoxicated, stated that he looked `real tired.' The jury's finding that the appellant was not so intoxicated that he could not form the specific intent is supported by the evidence.
"`In the present case, the record contains no evidence either that defendant consumed an inordinate quantity of drugs or alcohol, or that his behavior actually demonstrated diminished capacity. Accordingly, the court committed no error in failing to instruct the jury on lesser included offenses based on defendant's failure to form a specific intent to commit the underlying felony.'

"People v. Kaurish, 52 Cal.3d 648, 276 Cal.Rptr. 788, 813, 802 P.2d 278, 303 (Cal.1990), cert. denied, 502 U.S. 837, 112 S.Ct. 121, 116 L.Ed.2d 89 (1991)."
Hutcherson, supra, at 1198.
In the present case, although the trial court charged the jury on intoxication, there is no reasonable theory of the evidence that would support a manslaughter charge.

*268 "Section 13A-1-9(b), Ala.Code 1975, which pertains to the charging of lesser included offenses, provides the following: `The court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense.' (Emphasis supplied [in Smith ].) ...
". . . .
"`[I]ntoxication, whether voluntary or involuntary, is admissible in evidence whenever it is relevant to negate an element of the offense charged.' § 13A-3-2(a), Ala.Code 1975....
"... However, to negate the specific intent required for a murder conviction, the degree of the accused's intoxication must amount to insanity.
"`In an assault and battery case, voluntary intoxication is no defense, unless the degree of intoxication amounts to insanity and renders the accused incapable of forming an intent to injure. Lister v. State, 437 So.2d 622 (Ala.Cr.App.1983). The same standard is applicable in homicide cases. Crossling [Crosslin v. State, 446 So.2d 675 (Ala.Cr.App.1983) ]. Although intoxication in itself does not constitute a mental disease or defect within the meaning of § 13A-3-1, Code of Alabama 1975, intoxication does include a disturbance of mental or physical capacities resulting from the introduction of any substance into the body. § 13A-3-2. The degree of intoxication required to establish that a defendant was incapable of forming an intent to kill is a degree so extreme as to render it impossible for the defendant to form the intent to kill....
"`Ex parte Bankhead, 585 So.2d 112, 121 (Ala.1991).'"
"Smith v. State, 646 So.2d 704, 712-13 (Ala.Cr.App.1994)."
Smith v. State, 756 So.2d 892 (Ala.Cr.App. 1998) (emphasis added). See also Windsor v. State, 683 So.2d 1027, 1037 (Ala.Cr.App. 1994), aff'd, 683 So.2d 1042 (Ala.1996) (holding that the trial court properly failed to instruct the jury on voluntary intoxication and manslaughter where there was no evidence that the appellant was intoxicated at the time of the offense, although there was evidence that the appellant had been drinking beer on the day of the offense, where there was no evidence concerning the quantity of beer he had consumed.) In Smith v. State, supra, this Court concluded that, despite a witness's statement that the appellant had consumed some beer prior to killing the victim and despite the appellant's testimony that he had consumed "a 32-oz. `mug' of gin" prior to the offense, the circumstances of the offense, including the appellant's actions and his prior statement that he intended to kill the victim, indicated that the appellant was not intoxicated. Similarly, in Barbour v. State, 673 So.2d 461, 468 (Ala.Cr.App. 1994), this Court found that the appellant was not entitled to an instruction on the lesser included offense of manslaughter despite his statement in his confession that he and his friends had purchased a 12-pack of beer and that they drank the beer before the killing. There was no evidence tending to show how much the appellant had consumed or that he had become intoxicated; moreover, the evidence indicated that he was not intoxicated, based on the fact that his behavior did not demonstrate a diminished capacity.
Moreover, a manslaughter charge would have been incompatible with the appellant's defense in this case. Throughout the trial, the appellant submitted that he shot the victim only once and that it was his accomplice who actually killed the victim. In one of his statements, the appellant *269 also stated that he shot the victim only once. In closing arguments, defense counsel argued that the victim might have actually been killed outside of the home by the other boys and drug inside, so that when the appellant shot the victim he was already dead. At no time did the appellant argue that he was under the influence or intoxicated at the time of the offense.
"Where the instructions requested would have conflicted with defense strategy, there is no error in the trial court's failure to give the instructions." Bush v. State, 695 So.2d 70, 113 (Ala.Cr.App.1995), citing Gurley v. State, 639 So.2d 557 (Ala. Cr.App.1993); Hunt v. State, 659 So.2d 933 (Ala.Cr.App.1994), aff'd, 659 So.2d 960 (Ala.), cert. denied, 516 U.S. 880, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995); Hutcherson v. State, supra at 1174. In Bush v. State, supra, this Court noted that the appellant's defense strategy was "to convince the jury that he had not been involved in the commission of the crime" by "endeavor[ing] to place the blame on Cornelius Pringle and Edward Pringle; he asked the jury not to believe his confession because of alleged coercion; he suggested that Patricia Pringle was motivated to lie; and he urged the jury to believe that Tony Holmes's identification of Cornelius Pringle as the assailant was accurate." Id. at 112-13. He had never argued that he was unable to form the requisite intent due to intoxication; therefore, instructions as to manslaughter would have been inconsistent with his trial strategy.
Similarly, in Sockwell v. State, 675 So.2d 4, 25-26 (Ala.Cr.App.1993), this Court found no plain error in the trial court's failure to give a charge on the lesser included offenses of manslaughter and intoxication, where these instructions would have been incompatible with the defenses in the case. This Court further noted in Sockwell that the appellant had testified that his codefendant had actually killed the victim and, during his testimony, he gave a specific and detailed rendition of the murder. Thus, it was clear that neither alcohol nor drugs had hampered his ability to recall the events surrounding the offense. See also Lacy v. State, 629 So.2d 688 (Ala. Cr.App.), cert. denied, 629 So.2d 691 (Ala. 1993) (this Court noted that a defense of self-defense refutes the argument that the appellant acted recklessly in that he clearly intended to defend himself). In the present case, the appellant's statement to the police indicated a detailed and specific recollection of the construction and testing of homemade silencers and the staging of the trap set for the victim. Moreover, the appellant admitted taking a checkbook from the victim's pocket, as well as other items. All of the evidence indicated that robbery was the motivation behind the offense; therefore, manslaughter would have been inapplicable as "`no plausible theory of the evidence ... would indicate that [the appellant] caused the victim's death either intentionally, recklessly, or while intoxicated but did not take the victim's property.'" Ex parte Jackson, 674 So.2d 1365, 1367 (Ala.1994).

B.
The appellant also argues that he was entitled to instructions on the lesser included offenses of felony murder and intentional murder. In his brief on appeal, the appellant makes no argument in support of his claim that an intentional murder instruction should have been given and he points to no evidence that would have supported such an instruction. He argues that an instruction on felony murder should have been given because, he says, the jury could have concluded that although he intended to rob the victim, he did not intend to kill him. The appellant bases this argument on the evidence that *270 Marcus Carter had stated that he was aware that a robbery had been planned, but not that the victim would be killed. He also argues that the jury could have concluded that Daniel Minor, rather than he, shot and killed the victim. He also again argues that the jury could have concluded that he was too intoxicated to form the requisite intent to kill. This final argument by the appellant was treated in Part I.A. of this opinion. Because robbery requires specific intent, if he had presented evidence that his intoxication negated such intent, he would not be entitled to a charge on felony murder.
There is no reasonable theory of the evidence that would have supported a charge on the lesser included offenses of intentional murder or felony murder. The evidence presented indicates that the appellant either intentionally killed the victim in the course of a robbery and was guilty of capital murder, or he was not guilty. The evidence presented clearly shows that the appellant and his accomplices carefully planned and arranged to rob and to kill the victim. It had been discussed well in advance of the murder and, just before the offense, the appellant had laid in wait, armed, and had fashioned silencers to aid in the commission of the murder.
In Ex parte Myers, 699 So.2d 1285, 1290-91 (Ala.1997), the appellant, who had argued that he was under the influence of cocaine when he had committed the offense, claimed that the trial court erred in failing to instruct the jury on the lesser included offense of felony murder because "the evidence, when considered in the light most favorable to the State, could have convinced the jury that although he had a motive and intended to rob the victim of her VCR in order to obtain drugs, he did not plan to kill heri.e., that he did not have the specific intent to kill her." Id. at 1290. The defendant had argued that Starks v. State, 594 So.2d 187 (Ala.Cr.App. 1991), supported his claim that he was entitled to a lesser included offense charge on felony murder. However, the Alabama Supreme Court held that the facts in Starks v. State, supra, were distinguishable from the facts in Myers because in Starks there was evidence of a planned robbery, but no evidence that the defendant had a weapon when he entered the store he intended to rob. In holding that the facts supported the capital murder charge and failed to support a lesser included offense charge on felony murder, the Court stated:
"From a thorough review of the record, we conclude that, as the State contends, there was no testimony that Myers had not planned to kill his victim and no testimony that he was not armed with a knife before he entered the victim's house. Rather, although ever since he was arrested, Myers has maintained his innocence of the murder and has insisted that he found the VCR and then traded it for drugs, the evidence established that Myers gained entry into the victim's house by deception, that he pretended to use the telephone, that he stabbed and killed his victim, and that he took the victim's VCR to trade for crack cocaine. That evidence could support only a conviction of the capital offense for which Myers was charged in the indictment. We find no evidence to support a theory of felony murder. The trial court did not err in failing to give an instruction on felony murder."
699 So.2d at 1291.
Similarly, in Ex parte Clark, 728 So.2d 1126 (Ala.1998), the appellant claimed that the trial court erred in failing to instruct the jury as to the lesser included offense of felony murder because, he said, the jury could have determined that he had committed a first-degree robbery but that he *271 did not intend to murder the victim. However, the Alabama Supreme Court concluded that, based on the evidence presented, "a conviction of felony murder would have been inconsistent with the evidence presented at trial because `[t]he [victim's death was] not "unintended [death] caused by [the defendant's] dangerous conduct."` Taylor v. State, 666 So.2d 36, 55 (Ala.Cr. App.1994) (citations omitted)." Id., 728 So.2d at 1135. The Court also found that such a charge would have been inconsistent with the defense presented by the defendant in that he had admitted to the murder, but had claimed that he did not rob the victim.
In the present case, all of the evidence shows that the appellant acted in a cold, calculating, and intentional manner in preparing to commit and in effectuating the murder and robbery of the victim. Therefore, a charge on the lesser included offense of felony murder was not warranted. Thus, the trial court did not err in failing to give such an instruction.
Furthermore, there is no reasonable theory from the evidence that would have supported a charge on the lesser included offense of intentional murder. There is no theory of the evidence that would have supported an intentional murder but not a robbery. The record indicates that the appellant had been told by the victim's son that he would have a large amount of money on his person at the time, and there was evidence that the appellant confronted the son following the offense because the victim failed to have that amount of money in his possession when he was killed. There was evidence that the appellant went to the home of Abraham Barnes following the offense, where he hid stolen property and weapons.
"`The trial judge did not err in refusing to give the jury a charge on the lesser included offense of intentional murder. A trial judge may refuse to charge on a lesser included offense when it is clear to the judicial mind that there is no evidence to support the jury's being charged on the lesser included offense. Greer v. State, 475 So.2d 885, 890 (Ala.Cr.App.1985); Wesley v. State, 424 So.2d 648 (Ala.Cr.App. 1982).' Gurganus v. State, 520 So.2d 170, 174 (Ala.Cr.App.1987). `Here, neither the evidence presented by the prosecution nor that presented by the defense provides a rational basis for a verdict of murder.' Parker v. State, 587 So.2d 1072, 1083 (Ala.Cr.App.1991). Applying the logic set forth in Holladay v. State, 549 So.2d 122, 129-130 (Ala.Cr. App.1988), aff'd, 549 So.2d 135 (Ala. 1989), cert. denied, 493 U.S. 1012[, 110 S.Ct. 575, 107 L.Ed.2d 569] (1989), and substituting the present offense and pertinent facts for those set out in that case, it is clear that the evidence that makes the present case a capital offense, i.e., murder committed during a robbery in the first degree, is undisputed. The appellant acknowledges that the perpetrators intended to rob the victims and that the murder occurred during that robbery. There was no evidence presented that the victims were not robbed during the murder. The crime of intentional murder is automatically elevated to capital murder when it is committed during a robbery in the first degree. Therefore, if the evidence in that case showed that the appellant intentionally killed the victim during the commission of a first degree robbery, then the jury should convict the appellant of capital murder."
Price v. State, 725 So.2d 1003, 1055 (Ala. Cr.App.1997), aff'd, 725 So.2d 1063 (Ala. 1998).
Moreover, the appellant's argument that he was entitled to lesser included offense *272 charges because the jury may have believed that Daniel Minor actually killed the victim is without merit. The defendant in Price, supra, argued that he was entitled to a charge on intentional murder as a lesser included offense of capital murder for the same reason. This Court disposed of the appellant's argument as follows:
"The appellant appears to believe that, if he intended to kill the victim, but did not actually participate in the killing, remaining only an observer who was there to render aid if the need arose, and actively participated in only the robbery, he would be guilty of intentional murder rather than capital murder. However, in Alabama, an individual who is present with the intent to aid and abet in the commission of an offense is as guilty as the [principal] wrongdoer. §§13A-2-20, -23, Code of Alabama 1975. See Stokley v. State, 254 Ala. 534, 49 So.2d 284 (1950); Robinson v. State, 335 So.2d 420 (Ala.Cr.App.1976), cert. denied, 335 So.2d 426 (Ala.1976); Heard v. State, 351 So.2d 686 (Ala.Cr.App.1977); Hill v. State, 348 So.2d 848 (Ala.Cr.App.1977), cert. denied, 348 So.2d 857 (Ala.1977). `A conviction of one charged in the indictment with having been the actual perpetrator of a crime is authorized on proof of a conspiracy or that the accused aided and abetted in the commission of the crime. Stokley v. State, 254 Ala. 534, 49 So.2d 284 (1950). An aider and abettor would be indicted directly with the commission of the substantive crime and the charge may be supported by proof that he only aided and abetted in its commission. Pope v. State, 365 So.2d 369 (Ala.Cr.App.1978).' Killough v. State, 438 So.2d 311 (Ala.Cr.App.1982), reversed on other grounds, 438 So.2d 333 (Ala.1983). As long as the appellant intentionally promoted or aided in the commission of the killing itself, whether he actually committed the murder does not affect his liability or his guilt. Lewis v. State, 456 So.2d 413 (Ala.Cr.App. 1984). The trial court instructed the jury as to the laws of complicity and accomplice liability in the present case."
725 So.2d at 1055. In the present case, the trial court also instructed the jury on the laws of complicity and of accomplice liability; thus, whether the appellant pulled the trigger is of no legal consequence if the evidence indicates that he aided and abetted in its commission.
There is no reasonable theory of the evidence that would support a conviction for intentional murder or felony murder in the present case. Therefore, the trial court did not err in failing to instruct the jury as to these lesser included offenses.

II.
The appellant argues that the trial court improperly excluded a venireperson from serving on his jury in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). The appellant submits that the potential juror was excused without any follow-up questioning by the trial court because she expressed a fixed opinion about the death penalty.
The record indicates that, before the voir dire questioning, but following the initial qualification of the venire, the trial court said that if any members "would like to offer an excuse," then they should approach the bench. A number of potential jurors presented excuses of undue hardship, including the potential juror cited by the appellant in his argument. In the course of taking these excuses, the prosecutor, for the record, indicated that the appellant had waived his right to be present during these proceedings. Defense counsel again acknowledged that the appellant had waived his right to be present *273 in the courtroom during those proceedings and the trial court responded that it had excused two people at that point and asked if there was any objection to his proceeding with excusing the potential jury. Defense counsel stated that the trial court could proceed. There is no error caused by the excusal of potential jurors outside the defendant's presence. Ex parte Pierce, 612 So.2d 516, 518 (Ala.1992); § 12-16-74, Ala.Code 1975. Thereafter, the potential juror the appellant now argues should not have been excluded identified herself to the trial court and the following transpired:
"JUROR: I just don't believe in capital punishment.
"THE COURT: All right, ma'am. You can serve though on a regular case.
"JUROR: Civil, uh-huh. (Yes).
"THE COURT: What about a regular criminal case not having a capital murder involved?
"JUROR: Well, if it's not involving, you know, killing somebody, something like that.
"THE COURT: I understand. Okay. Thank you,.... I appreciate it.
"JUROR: Thank you."
The trial court then continued with taking the veniremembers' excuses. The record does not indicate that this potential juror was excused by the trial court; however, no further mention of her appears in the record. This juror was not struck for cause by one of the parties. Rather, she was removed by the trial court pursuant to its discretion under § 12-16-63, Ala.Code 1975. This statute states the following concerning a trial court's excusing of prospective jurors from service when they are not disqualified:
"(b) A person who is not disqualified for jury service may be excused from jury service by the court only upon a showing of undue hardship, extreme inconvenience or public necessity, for a period the court deems necessary, at the conclusion of which the person may be directed to reappear for jury service in accordance with the court's directions."
See also §§ 12-16-60, 12-16-63(a). The trial court is vested with broad discretion in excusing potential jurors from service under this section. See Giles v. State, 632 So.2d 568, 574 (Ala.Cr.App.1992). Trial courts have properly excused jurors pursuant to this section for a myriad of reasons. See Madison v. State, 718 So.2d 90, 100 (Ala.Cr.App.1997) (potential juror excused because mother had recently undergone surgery and suffered with Alzheimer's disease; another potential juror excused because juror's mother was terminally ill); Allen v. State, 683 So.2d 38, 42 (Ala.Cr. App.1996) (eight potential jurors were excused, most of whom were students at the University of Alabama with pending final exams); Knotts v. State, 686 So.2d 431, 480 (Ala.Cr.App.1995) (veniremember excused by a "court strike" because there was an odd number of veniremembers remaining); Giles v. State, supra, at 574 (black potential juror properly excused because she was sole caretaker of an infant and a five-year-old child). See also Gwin v. State, 425 So.2d 500, 504 (Ala.Cr.App.1982) (appellant's claim that judge had arbitrarily excused potential jurors was without merit). Moreover, a trial court is not required to ask follow-up questions or to have potential jurors elaborate on any possible preventions of their hardships. See Madison v. State, supra, at 100.
The rationale behind allowing the trial court to excuse jurors lies in the predecessors to this statute, although the general terminology for the justifications for the excuses differed. As opposed to "undue hardship, extreme inconvenience, or public necessity," the earlier statutes called for removal beyond disqualification or exemption *274 "for any other reasonable and proper cause to be determined by the Court." Code 1940, Tit. 30, § 5. This statute was construed to enable a trial court "in its discretion to excuse jurors `for reasonable and proper cause.'" Blackmon v. State, 246 Ala. 675, 679, 22 So.2d 29 (1945) (a juror was excused because he had a fixed opinion).
"The Court's exercise of discretion in excusing jurors from duty in the trial of a capital case must be founded within reason, justice, and in consonance with the defendant's constitutional rights. The Court does not have the right to excuse a regular or special juror from service in a capital case capriciously, or for no reason at all."
Blackmon v. State, 246 Ala. at 679, 22 So.2d 29.
"Under this section, a trial court is given much discretion in attempting to provide a jury panel free of any member who might be biased or prejudiced in the slightest degree. Calhoun County v. Watson, 152 Ala. 554, 44 So. 702. Nor is this discretion limited in its exercise to the enumerated statutory grounds for challenge, but is general. Louisville & Nashville R.R. Co. v. Young, 168 Ala. 551, 53 So. 213.
"Over three centuries ago Lord Coke in capsule form gave a comprehensive answer to the question we're now considering when he wrote that to be considered impartial a juror must `be indifferent as he stands unsworn.' See Co. Litt. 155b.
"In Burdine v. Grand Lodge of Alabama, 37 Ala. 478, Justice Stone with his usual clarity of expression wrote:
"`... This rule is necessary as a protection to the public interest, and as a guaranty of that purity and integrity in the administration of the law, which alone can inspire respect for, and confidence in our judicial tribunals.'
"The action of a trial court in excusing a juror for other than statutory causes presents on review a mixed question of law and fact, and the findings of the trial court on the facts ought not be set aside by a reviewing court unless the error is manifest. Reynolds v. United States, 98 U.S. [(8 Otto)] 145, 25 L.Ed. 244."
Cooper v. Magic City Trucking Service, Inc., 288 Ala. 585, 588-89, 264 So.2d 146 (1972). This policy was carried over to § 12-16-5, Ala.Code 1975.
"The right to excuse jurors is given to the Court by statute, T. 30, § 5, Code of Alabama 1940, Recomp.1958; Code of Alabama 1975, § 12-16-5. The statute mandates that the trial court may excuse any juror if that juror is disqualified or exempt, or in the determination of the trial judge some reasonable cause or purpose exists for excusing the juror. Further, under this section [no] abuse of discretion is shown when jurors are excused without defense consent. Mullins v. State, 24 Ala.App. 78, 130 So. 527.
"The record clearly indicates that the trial judge in exercising his discretion to excuse jurors, was fulfilling his duty to provide both the State and the defendant with a fair and impartial jury. In doing so, he did not abuse the wide discretion granted to him for this purpose. Biggs v. State, 20 Ala.App. 449, 103 So. 706."
Rogers v. State, 365 So.2d 322, 331 (Ala.Cr. App.1978).
Thus, under these guidelines, it was proper for a trial court to "ex mero motu" excuse a juror who had stated during his qualification that he would not convict on circumstantial evidence. Williams v. State, 241 Ala. 348, 349-50, 2 So.2d 423 (1941). See also Coker v. State, 144 Ala. *275 28, 31, 40 So. 516 (1906) (a trial court properly excused a juror who indicated that he would not "hang a man on circumstantial evidence" in a capital case). This Court also indicated in dicta that where a potential juror indicated during voir dire that he had spoken to a party before the trial, a trial court would be required to excuse such a juror in order to ensure a fair and impartial trial. Baxley v. State, 18 Ala.App. 277, 278-79, 90 So. 434 (1921).
In the present case, the appellant did not object to excusing this potential juror, and no plain error occurred. It is, moreover, clear that the appellant suffered no prejudice because of the removal of this juror; the juror could have properly been struck for cause by the State based on her views against capital punishment.
"To the average juror, who is unfamiliar with legal terms and concepts, voir dire questioning may be confusing and complicated.
"`"[T]he proper standard for determining when a prosecutive juror may be excluded for cause because of his... views on capital punishment is ... whether the juror's views would `prevent or substantially impair the performance of his duties as juror in accordance with his instructions and his oath.'" Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (quoting Adams v. Texas, 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980)). It is not required that a prospective juror's bias in this regard be proved with "unmistakable clarity." Id., 469 U.S. at 424, 105 S.Ct. at 852.
"`"[M]any veniremen simply cannot be asked enough questions to reach the point where their bias has been made `unmistakably clear'; these veniremen may not know how they will react when faced with imposing the death sentence, or may be unable to articulate, or may wish to hide their true feelings. Despite this lack of clarity in the printed record, however, there will be situations where the trial judge is left with the definite impression that a prospective juror would be unable to faithfully and impartially apply the law. [T]his is why deference must be paid to the trial judge who sees and hears the juror." "Id., at 421-26, 105 S.Ct. at 852-53 (footnote omitted).'

"Coral v. State, 628 So.2d 954, 969-70 (Ala.Cr.App.1992)."
Boyd v. State, 715 So.2d 825, 842 (Ala.Cr. App.1997). This potential juror was properly excused.

III.
The appellant argues that the trial court improperly coerced the jury into returning a death sentence after the jury had told the court that it was unable to reach a verdict. Specifically, the appellant argues that when, during the sentencing phase of his trial, the jury informed the trial court that it was unable to reach a verdict, the court should have declared a mistrial pursuant to § 13A-5-46(g), Ala. Code 1975. The trial court then charged the jury that it should continue deliberations; the appellant argues that this resulted in error on three grounds: that the charge included incorrect and misleading statements that coerced the jury into arriving at a death verdict; that the charge emphasized the cost of another trial and that doing so coerced a death verdict; and that the trial court's action in failing to declare a mistrial coerced the jury into arriving at a death verdict.
The record indicates that approximately an hour and one-half after the jury had begun deliberations in the sentencing *276 phase of the appellant's trial, the bailiff notified the trial court that the jury wished to return to the courtroom. The trial court instructed the parties that the jury had apparently been unable to reach a verdict and that the trial court intended to bring them back into courtroom and "see if I can help them on the law, explain to them, of course, I can't help them on the facts, but impress upon them the desirability of them reaching a verdict on this phase of this trial and what would occur if they did not." The jury was then brought into the courtroom and the trial court asked the foreperson if there were any questions concerning the law from the jury. The foreperson responded that no one had raised any such questions and the trial court then stated:
"THE COURT: All right. Ladies and gentlemen, I can't help you on the facts in this case. That's for you.
"All of the parties want you to decide this case if you can. The State of Alabama, the defense, and the court system have gone to considerable expense for this trial.
"If you can't decide this case, I'll have to declare a mistrial and it will have to be all done over again. Not the guilt phase, but the sentencing phase.
"But basically we would have to go through substantially the same procedure to selecting a jury. Substantially all of the guilt evidence would have to be presented again since this jury would not have heard that evidence. The jury again would have to be sequestered and put up in a motel.
"Time will have passed. Recollections will have dimmed. Some witnesses may not be available and more expense will be incurred.
"A new jury may not have as much evidence as you have today to base a verdict on. And it's highly unlikely that a new jury would have any more or any better evidence than you ladies and gentlemen have before you.
"It's your duty to agree on a verdict if you can do so without violating your conscience or convictions based on the evidence in this case.
"You should deliberate patiently and long if necessary. You should have a full and free interchange of views with each other, and you should consider the issues submitted to you without prejudice or preformed bias.
"Ladies and gentlemen, cultivate a spirit of harmony and tolerance and arrive at a verdict if you can possibly do so.
"Look closely and weigh the testimony of the witnesses solely with the view of finding the truth shutting your eyes as to any personal results of your findings. Apply the facts as you find them to the law given to you by the Court.
"No jury out ofno juror out of pride of his own opinion should refuse to agree nor stand out in an unruly, obstinate, or unreasonable way. On the other hand, no juror should surrender their conscientious views founded on the evidence and the law declared by the Court.
"I ask humbly that you let each juror re-examine the grounds of their opinion and reason with the other jurors concerning the facts and with an honest desire to arrive at the truth and to render a true verdict according to the evidence.
"Ladies and gentlemen, lay aside all pride of opinion and judgment. Examine any difference of opinion that they may be among you with a spirit of fairness. Reason together, talk over your differences, harmonize them if possible so that this case can be justly disposed of.

*277 "Now, ladies and gentlemen, it's not my purpose to force or coerce you to reach a verdict in this case. What I've said to you mustn't be taken as any attempt on my part to require any of you to surrender your honest and reasonable convictions founded on the law and the evidence in this case.
"My sole purpose is to impress on you your duty and the desirability and importance of your reaching a verdict if you can conscientiously do so.
"On behalf of the parties and the court system, I respectfully ask you to deliberate longer and reach a verdict if possible."
Following this charge, defense counsel objected, stating that "[i]n spite of the Court's cautionary language, I think the overall effect of the charge is to give the jury an indication that the Court favors the imposition of the more serious penalty." The jury then retired to continue deliberations and, approximately an hour later, returned with an advisory verdict of death by a vote of 10-2.
The appellant first argues that the trial court used incorrect and misleading statements to coerce the jury into a death verdict. The appellant argues that by announcing that it was unable to reach a verdict, the jury had essentially informed the judge that at least 10 jurors would not vote for a death sentence, and because Alabama law requires 10 votes for the imposition of the death sentence, the jury was effectively recommending a sentence of life imprisonment without parole. The appellant further argues that, because the trial court could have properly considered this to be a recommendation of a sentence of life imprisonment without parole, because there must have been less than 10 votes for death, the trial court's instruction that a mistrial would have to be declared if the jurors were unable to decide the case was an incorrect statement of the law. The appellant further alleges an inaccuracy in the trial court's instruction by his statement that, "[a]ll parties want you to decide this if you can. The State of Alabama, the defense, and...." The appellant argues the defense should not have been included because he objected following this charge. However, when this statement is viewed in the context of the entire instruction, it is clear that the trial court was referring to the parties' efforts involved in trying the case and the parties' wanting the jury to reach a proper verdict for sentencing if possible. The appellant's objection referred to the trial court's charge as being coercive. However, the trial court's comments were clearly made to ensure and promote judicial efficiency and judicial economy.
Moreover, the appellant's argument that the jury was essentially returning an advisory verdict of life imprisonment without parole is without merit. The record indicates that the jury never revealed the number of votes for death or for life imprisonment without parole when it returned to the courtroom. It is not clear whether every juror had reached a decision. There is also no indication that there were seven jurors who were voting for life imprisonment without parole as required by § 13A-5-46(f), Ala.Code 1975. The indication from the record is that the jury was unable to reach any verdict; therefore, it would not have been proper for the trial court to have treated the jury's return as a verdict for life imprisonment without parole.
"`"The general rule in Alabama has been that it is not improper for the trial court to urge upon the jury the duty of attempting to reach an agreement or verdict as long as the judge does not suggest which way the verdict should be returned."' King v. State, 574 So.2d *278 921, 927-28 (Ala.Cr.App.1990), quoting McMorris v. State, 394 So.2d 392 (Ala. Cr.App.1980), cert. denied, 394 So.2d 404 (Ala.1981), cert. denied, 452 U.S. 972, 101 S.Ct. 3127, 69 L.Ed.2d 983 (1981). An Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), charge, also known as a `dynamite charge,' is permissible if the language of the charge is not coercive or threatening. Grayson v. State, 611 So.2d 422, 425 (Ala.Cr.App.1992); King v. State, 574 So.2d at 928."
Gwarjanski v. State, 700 So.2d 357, 360 (Ala.Cr.App.1996). In Ex parte Slaton, 680 So.2d 909 (Ala.1996), the jury, after it had begun its sentence-stage deliberations, sent the following question to the trial court: "What happens if we cannot come up with enough numbers to go either way?" The trial court responded by instructing them that "it would be highly desirable and important if there is any way possible that a verdict be reached. The instructions emphasized harmony and consistency with conscience, and informed the jury that, if it was unable to reach the necessary numbers, "I think you know what the Court will have to do. I would have to declare a mistrial and the case might have to be tried again as far as the sentencing phase that you are in at this time." The Alabama Supreme Court held that such instructions were proper and stated:
"This Court has held that `a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the Court does not suggest which way the verdict should be returned and no duress or coercion is used.' Showers v. State, 407 So.2d 169, 171 (Ala.1981) (citation omitted). The trial judge urged the jury to `resume deliberations' and to `cultivate a spirit of harmony.' The trial judge did not ask the jury what its vote was; he did not suggest which way the verdict should be returned; and he made no threat or coercion to suggest the jury had to return a verdict. The trial court did not violate Slaton's rights in giving this supplemental charge."
680 So.2d at 926. The trial court's instruction that it would have to declare a mistrial if the jury was not able to arrive at a proper sentencing verdict is a correct statement of law. This argument by the appellant is without merit.
Moreover, the appellant's argument that the charge was coercive because it instructed the jury to consider the financial cost of another trial is also unfounded. "It is not error for the trial court to call the jury's attention to the time and expense a new trial would entail. Poellnitz v. State, 48 Ala.App. 196, 263 So.2d 181 (1972); Watson v. State, 398 So.2d 320 (Ala.Cr.App.1980); Galloway v. State, 416 So.2d 1103 (Ala.Cr.App.1982)." Wiggins v. State, 429 So.2d 666, 669 (Ala.Cr.App.1983) (wherein the trial court instructed the jury during the Allen charge that "as you know there's a considerable expense attached to any trial. I just want y'all to think about it ..."). Similarly, in Miller v. State, 645 So.2d 363, 365 (Ala.Cr.App.1994), the trial court gave the jury a supplemental charge on the second day of deliberations to urge it to fulfill its oath and to render a fair verdict. In doing so, the Court stated that it did not wish to know the numerical division of the jury but noted that the majority might "consider that these other folks are as intelligent as you are, they've heard the same evidence in the case, and reconsider your position." The trial court also charged, "also remember that trials are expensive. It costs money to put this case on. Some jury will have to do it, it won't go away. It will have to be handled." Id., at 365. The appellant in Miller objected on the grounds that the trial *279 court's instructions implied to the jury that the Court "`expected' a verdict" and thereby "`coerced'" the jury. Id., at 366. This Court found no error in the trial court's instructions in that they were neither threatening nor coercive. This Court stated:
"`As this court stated in McMorris v. State, 394 So.2d 392 (Ala.Cr.App. 1980), writ denied, 394 So.2d 404 (Ala. 1981), cert. denied, 452 U.S. 972, 101 S.Ct. 3127, 69 L.Ed.2d 983 (1981), "The general rule in Alabama has been that it is not improper for the trial court to urge upon the jury the duty of attempting to reach an agreement or verdict as long as the judge does not suggest which way the verdict should be returned." 394 So.2d at 403. An "Allen Charge" or "Dynamite Charge" is permissible if it is not coercive. See Franklin v. State, 502 So.2d 821 (Ala.Cr.App.1986), writ quashed, 502 So.2d 828 (Ala.1987). The trial court may also make reference to the expense of a new trial. See Wiggins v. State, 429 So.2d 666 (Ala.Cr.App.1983).'

"King v. State, 574 So.2d 921, 927-28 (Ala.Cr.App.1990). Whether an `Allen Charge' is coercive must be evaluated in the `whole context' of the case. Ex parte Morris, 465 So.2d 1180, 1183 (Ala. 1985). In this case, the trial judge did not set any deadline for reaching a verdict. See Adair v. State, 641 So.2d 309 (Ala.Cr.App.1993); McGilberry v. State, 516 So.2d 907, 910 (Ala.Cr.App.1987). `Under Alabama law, "a trial judge may urge a jury to resume deliberations and cultivate a spirit of harmony so as to reach a verdict, as long as the court does not suggest which way the verdict should be returned and no duress or coercion is used." Showers v. State, 407 So.2d 169, 171 (Ala.1981).' Ex parte Giles, 554 So.2d 1089, 1093 (Ala.1987). `The Supreme Court and this court have held on numerous occasions that the "Allen" or "dynamite" charge is not error unless the language used is threatening or coercive.' Grayson v. State, 611 So.2d 422, 425 (Ala.Cr.App.1992), and cases cited therein."
Miller v. State, supra, at 366. Thus, the trial court did not err by emphasizing the cost of another trial.
Finally, the appellant alleges that the trial court erred in failing to declare a mistrial and that its failure to do so coerced the jury into a death verdict. In his brief on appeal, the appellant raises a "catch-all" argument that essentially argues the cumulative effect of error by having given this charge to the jury. However, we have found no error in this charge; it was not improper. In Bates v. State, 659 So.2d 201, 204-05 (Ala.Cr.App.1994), this Court noted that such an instruction was not a "dynamite" charge and that it was in no way coercive or threatening as it was similar in its points made to the jury to the pattern jury instructions for Alabama.
"The preferable instruction for a `hung jury' is set forth in Alabama Pattern Jury InstructionsCriminal, Instruction 1.8, Hung Jury:

"`Members of the jury, I am sorry to hear that you are unable to reach a verdict. The Court cannot release you at this time. You should make further efforts to arrive at a verdict. Each juror is entitled to his or her opinion of the evidence, but I know that you do not wish to put the State to the expense of another trial if it can be avoided. If you cannot agree, a mistrial would be declared and this case would have to be tried again. There is no reason to believe that another jury would have better or *280 clearer evidence than has been presented to you.
"`This does not mean that you surrender an honest conviction as to the weight or the effect of any evidence solely because of the opinion of other jurors or because of the importance of arriving at a decision. But you should give respectful consideration to each other's views and talk over any difference of opinion in a spirit of fairness and candor. If possible, you should resolve any differences and come to a common conclusion so that the case may be completed.
"`I would be happy to give you an explanatory charge on the law.
"`It is natural that differences of opinion will arise. When they do, each juror should not only express his opinion but the facts and reasons upon which he bases that opinion. By reasoning the matter out it may be possible for all jurors to agree. What I have said to you must not be taken as an attempt on the part of the Court to acquire or force you to surrender your honest and reasonable convictions founded upon the law and the evidence in this case. My sole purpose is to impress upon you your duty and the desirability and importance of reaching a verdict if you can conscientiously do so.
"`You may retire and continue your deliberations.'"
Bates v. State, supra, at 204-05.
The trial court's instructions to the jury, urging them to arrive at a proper verdict, during the sentencing phase of the appellant's trial were also similar in substance to the pattern instructions and were neither coercive, threatening, nor improper.

IV.
The appellant argues that the trial court improperly directed prospective jurors to give a specific answer to a voir dire question; specifically, the appellant argues that the trial court improperly instructed the jury in such a manner that the jurors believed they had to say that they would not automatically impose the death penalty. The appellant cites instructions given by the trial court during voir dire questioning of prospective jurors, wherein the trial court stated:
"[I]f somebody said, If the Defendant was convicted of the capital offense, would you automatically vote for death? Well, now knowing what you know now, you would certainly know that the answer would be no."
No objection was made to this charge; therefore, it is reviewable under the plain-error standard. Rule 45A, Ala.R.App.P. The excerpt cited by the appellant has been taken out of context. A review of the entire voir dire examination of the jurors indicates that they were fully informed that a finding of guilt as to capital murder was not an automatic verdict for the death penalty, rather that they would be required to weigh the aggravating and mitigating circumstances in order to make this determination. Before giving the instruction cited by the appellant, the trial court fully explained to the potential jury what would be entailed in the trial stages, including the guilt and sentencing phases. He then instructed the jury that he had given it such information so that it would be better prepared to answer the voir dire questioning of the attorneys. He stated:
"Now, I have told you all that so that some of the questions the attorneys I think will probably ask you will make sense to you and you would be able to answer them intelligently. For example, if someone said, if the defendant *281 was convicted of the capital offense, would you automatically vote for death? Well, now knowing what you know, you would certainly know that the answer would be no. That under the law as a judge would give it that you would first weight those factors one against the other and no vote would be automatic in the sentencing phase.
"... Now, couple of other things I want you to understand in answering these questions. You have every right to have unpopular or different opinions from somebody else....
"Don't hesitate in these questions if you think that something you think or believe or feel is unpopular, don't hesitate to say so. There is nothing wrong with having a bias or prejudice because of a particular thing."
The trial court also instructed the jurors that they should freely admit any problems, biases, or fixed opinions that they may have and that, if they so chose, they could inform the court of such problems or feelings privately. The appellant initially asked the veniremembers if they would automatically vote for the death penalty; no one answered that he or she would do so. Thereafter, defense counsel asked, "[L]et's suppose that you find the defendant to be guilty and let's suppose that you find that person to be guilty of capital murder, is there anyone here who did not understand the statement, instructions from the judge that a finding of guilty of capital murder is not an automatic death penalty?" No potential jurors indicated that they did not understand that instruction. Defense counsel thereafter asked individual veniremembers similar questions on voir dire. On several occasions he reemphasized that if the appellant were to be found guilty of capital murder the death penalty was not automatic.
"In construing a jury instruction, we do so in the context of the charges as a whole. Haney v. State, 603 So.2d 368, 411 (Ala.Crim.App.1991), aff'd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993); Baker v. United States, 412 F.2d 1069 (5th Cir.1969), cert. denied, 396 U.S. 1018, 90 S.Ct. 583, 24 L.Ed.2d 509 (1970)." Slaton, 680 So.2d at 896. "`It is the charge in its totality and not some "magic words" that must determine whether the defendant's rights have been protected or error committed.'" Slaton, 680 So.2d at 892, quoting Finley v. State, 606 So.2d 198, 201 (Ala.Cr.App.1992). Although, looked at in isolation, the instruction given by the trial court may appear to direct the jury to a specific answer, this was clearly not the intent of the instruction.
"`Looking to the entire oral charge, we find that the objectionable character of the portion objected to was cured and that the objection advanced on appeal is not well taken. The misleading quality of the court's instruction is self-correcting when considered in the context of the entire oral charge when the charge is considered as a whole. And when each instruction is considered in connection with the others. We think it a reasonable assumption that the jury took a common sense view of the instruction and gave to them their plainly apparent meaning.'"
Austin v. State, 555 So.2d 324, 329 (Ala.Cr. App.1989), quoting Harris v. State, 412 So.2d 1278, 1281 (Ala.Cr.App.1982).
Considering the voir dire as a whole, there is no reasonable likelihood that the venire applied these instructions improperly.

V.
The appellant argues that he was denied his right to be present at the beginning *282 of his trial, because he was not present in the courtroom during the initial qualification of the venire. The record indicates that just prior to this introduction and qualification of the potential jurors, the appellant had been present with his attorneys; however, thereafter a brief recess was taken and the appellant and his attorneys were then not present for the identification of the veniremembers. The record indicates that as the trial court began the initial qualification of the jurors, defense counsel and the district attorney entered and exited the courtroom a number of times. As the judge began taking excuses from prospective jurors pursuant to § 12-16-63, Ala.Code 1975, see Part II, supra, the following bench conference occurred:
"[Prosecutor]: Judge, before we go any further, I would like to get it on record whether or not the Defense attorneys waive the presence of the Defendant during this stage of the jury qualification of actually being here in the courtroom.
"THE COURT: Uh-huh (Yes).
"[Prosecutor]: I spoke with them at the very beginning of it and they indicated to me that they have waived his presence in here during this stage, but I need to get it on the record.
"[Defense counsel]: Let me get [the other defense counsel].
"(Defense attorney ... leaves the courtroom.)
"(Defense attorneys ... present at bench:)
"THE COURT: [Prosecutor] wants to know if the defense waives the presence of the defendant in the courtroom during these proceedings.
"[Defense counsel]: Yes, sir.
"THE COURT: I have only excused two people so far. But is his presence waived at this time?
"[Defense counsel]: Yes, sir.
"THE COURT: All right. So it's all right to proceed with the
"[Defense counsel]: Yes, sir.
"THE COURT:excusing of the jury without the defendant being present?
"[Defense counsel]: Yes, sir.
"THE COURT: All right. Thank you, sir. Appreciate it."
Thus, defense counsel consented to the appellant's absence from the proceedings at this stage; therefore, we must review this claim for plain error. Rule 45A, Ala. R.App.P.
In Windsor v. State, 683 So.2d 1013, 1017 (Ala.Cr.App.1993), reversed on other grounds, 683 So.2d 1021 (Ala.1994), the appellant, who had been convicted of capital murder, argued that he had been denied his right to be present when the prospective jurors had been excused from jury service at his trial. This Court found the appellant's argument to be without merit and stated:
"At one time, the accused had the right to be present at that stage of the proceedings. McLemore v. State, 34 Ala. App. 34, 36 So.2d 452 (1948); Crump v. State, 28 Ala.App. 103, 179 So. 392 (1938). Code 1940, Tit. 30, §§ 5,63, 64 (repealed). The current statute, however, specifically states that the appellant does not have the right to be present when potential jurors are excused. Section 12-16-74, Code of Alabama 1975. `A judge in a capital case may excuse members of the venire outside the presence of the defendant and his counsel....' Ex parte Pierce, 612 So.2d 516, 519 (Ala.1992)."
Similarly, in Burgess v. State, [Ms. CR-93-2054, November 20, 1998] ___ So.2d ___ (Ala.Cr.App.1998), the appellant argued that he was denied his right to be *283 present at all critical phases of his capital trial because the trial court ordered the clerk of the jury commission to randomly reduce the venire outside of his presence. In holding that there was no plain error, this Court held:
"`Because the basis of the right to be present at trial is the constitutional mandate [that one be provided] an opportunity to defend one's self, due process requires that the defendant be personally present "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."' Finney v. Zant, 709 F.2d 643, 646 (11th Cir.1983), quoting Snyder v. Massachusetts, 291 U.S. 97, 107-8, 54 S.Ct. 330, 78 L.Ed. 674 (1934). The culling of an overcrowded venire by a clerk of the court is not such a situation. Burgess had no more right to be present at the random selection of veniremembers by the clerk of the county jury commission than he did to be present when the Administrative Office of Court drew up the master jury lists. The trial court did not err in allowing the random selection to be conducted out of Burgess's presence."
Id. at ____. See also Borden v. State, 769 So.2d 935 (Ala.Cr.App.1997), quoting Ponder v. State, 688 So.2d 280, 285 (Ala.Cr. App.1996), quoting Harris v. State, 632 So.2d 503, 512 (Ala.Cr.App.1992), aff'd, 632 So.2d 543 (Ala.1993), aff'd, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995) (if the appellant's presence would have been useless to his defense and the hearing was not considered a critical stage of the trial, there is no error in a capital defendant's absence from the hearing.).
In the present case, the trial court was authorized by statute to excuse these potential jurors from service outside the presence of the appellant and his counsel. There was no plain error based on the trial court's actions in doing so.

VI.
The appellant argues that his right to due process was violated, as well as his right against self-incrimination, by the admission into evidence of an involuntary statement. The appellant refers to a statement he gave while he was being treated in the hospital. The appellant alleges that he was in the intensive care unit of the hospital for over seven hours due to "extreme alcohol overdose" from an attempted suicide when the statement was taken. The appellant states that he was arrested while he was in the intensive care unit and was not interrogated until seven hours later. He further alleges that the statement was coerced because he was only 18 years old at the time and had had no prior contact with the criminal justice system. Thus, in his brief on appeal, the appellant argues that his "age, intelligence, hospitalization, intoxication, and fatigue were all unconstitutionally exploited by the officers' coercive method of questioning."
The record indicates that no evidence was presented at trial concerning the substances ingested by the appellant. There was evidence that the appellant was hospitalized in the intensive care unit and that one of the detectives had been informed by a friend of the appellant that the appellant had taken some pills and had consumed some alcohol. Detective Maze testified that, when he arrived at the hospital, the appellant had already been placed under arrest and that an officer had remained with him. Maze inquired of hospital staff whether the appellant had been given any narcotics that would affect him and he received a note from the staff indicating that the appellant had not received any medications that would affect his memory. *284 Detective Maze was also advised by hospital staff that the appellant was to be released at approximately noon. At 11:40 a.m., Maze took a statement from the appellant. He testified that there was no indication of the appellant's having been under the influence at that time, and that the appellant seemed alert and seemed to understand what was transpiring. The appellant was given the opportunity to submit any evidence to show that he had been so incapacitated or otherwise impaired that he was unable to understand his rights; however, the appellant indicated that he had nothing to submit. The State also presented evidence indicating that no coercive tactics were used and that the appellant gave the statement freely. The statement given by the appellant at the hospital indicated that he had been drinking on the day of the offense and that he was unable to remember what had happened.
In Griffin v. State, 500 So.2d 83, 87 (Ala.Cr.App.1986), the defendant was admitted to the hospital after he apparently attempted suicide by consumption of alcohol and an overdose of drugs. After he was discharged from the hospital and was ordered to take medication, the appellant was arrested. Several days later, he was interviewed and incarcerated, without the medication, and he gave a statement. He claimed that, under the totality of the circumstances, his statement was not voluntary because he was without his prescribed medication or medical attention. This Court found the appellant's claims to be without merit, stating:
"It is this court's duty to accord the trial court's determination great weight in deciding upon the voluntariness of a confession, and its finding will not be disturbed on appeal unless found to be manifestly contrary to the great weight of the evidence. Harris v. State, 420 So.2d 812 (Ala.Cr.App.1982); Myers v. State, 401 So.2d 288 (Ala.Cr.App.1981); Balentine v. State, 339 So.2d 1063 (Ala. Cr.App.), cert. denied, 339 So.2d 1070 (Ala.1976).
"`A finding of the trial court as to the voluntariness of a confession, following a hearing held outside the presence of the jury, will not be disturbed on appeal unless contrary to the great weight of the evidence and manifestly wrong.' Rush v. State, 397 So.2d 195, 197 (Ala.Cr.App.), writ denied, Ex parte Rush, 397 So.2d 197 (Ala.1981).
Moore v. State, 415 So.2d 1210 (Ala.Cr. App.1982), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982), is dispositive of the issue now before this court:
"`Where the voluntariness inquiry presents conflicting evidence, great weight must be given the trial judge's finding of voluntariness. Even when there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Thompson v. State, 347 So.2d 1371, 1375 (Ala.Cr.App.), cert. denied, 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978). "The trial court does not have to accept the testimony of (the) defendant as to the voluntariness of a confession if there is substantial testimony by others sufficient to constitute a predicate for the admission in evidence of the confession." Bradley v. State, 337 So.2d 47, 50 (Ala.Cr.App.1976).
"`The issue of the admissibility and hence the voluntariness of the statements and the confession in this case turns as it does in so many others, on *285 the question of which witnesses the trial judge believed.' Moore v. State, supra., at 1214-15. See also Ex parte Singleton, 465 So.2d 443, 445 (Ala. 1985); Todd v. State, 472 So.2d 707, 714 (Ala.Cr.App.1985)."
500 So.2d at 87-88.
Similarly, in Carr v. State, 640 So.2d 1064, 1071-72 (Ala.Cr.App.1994), the defendant had argued that his statement was involuntary because he had been treated in the prison infirmary for injuries and he was deprived of his medication and was suffering from his injuries when his statement was taken. This Court found that the trial court's holding that, under the totality of the circumstances, the appellant's statements were voluntary was proper. Id., citing Klingel v. State, 518 So.2d 853, 856 (Ala.Cr.App.1987) (the appellant's statement was determined to be voluntary despite his claims based on the fact that he suffered head injuries, a broken leg, and was sitting in a wheelchair with an IV in his arm when he gave the statement); Thompson v. State, 462 So.2d 777, 778-79 (Ala.Cr.App.1984) (the accused's statement was voluntary despite his pain and his hospitalization at the time that he gave the statement); Myers v. State, 431 So.2d 1342, 1345 (Ala.Cr.App.1982), cert. quashed, 431 So.2d 1346 (Ala.1983) (the accused's statement was voluntary although he was without epilepsy medication when he gave the statement, under the totality of the circumstances review, which included the fact that he was allegedly suffering the effects of withdrawal).
Moreover, the other factors raised by the appellant, including his age and vulnerability, while considerations under the totality of the circumstances concerning voluntariness, are not in and of themselves determinative.
"In Elrod v. State, 281 Ala. 331, 334, 202 So.2d 539, 542 (1967), this Court stated:
"`Accused's intelligence, character and situation at the time of the confession of the crime charged are important considerations in determining whether the confession was voluntary, but the fact that accused was of tender age or weak intellect will not alone render the confession inadmissible in evidence as involuntary. State v. Ashdown, 5 Utah 2d 59, 296 P.2d 726 [1956], affirmed, 357 U.S. 426, 78 S.Ct. 1354, 2 L.Ed.2d 1443 [1958].'"
Ex parte Brown, 540 So.2d 740, 744 (Ala. 1989). See also Jackson v. State, 549 So.2d 616 (Ala.Cr.App.1989) (this Court found that, although the appellant contended that his statement was involuntary because he was only 19 years of age, was in the twelfth grade, was interrogated for a long period, and was extremely nervous, the totality of the circumstances indicated that the appellant understood his constitutional rights and that his confession was voluntary).
In the present case, an examination of the totality of the circumstances indicates that the appellant understood his rights and that he voluntarily gave his statement while he was hospitalized. We find no abuse of discretion by the trial court in its finding that the statement was voluntary.

VII.
The appellant argues that his statement was improperly admitted into evidence in violation of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because, he says, the interrogating officer did not inform him that the court would appoint an attorney for him if he could not afford one. The appellant further argues that, when the officer finally stated that he did advise the *286 appellant of that right, it was in response to a "blatantly leading question" by the prosecutor. The record indicates that Detective Maze testified that he advised the appellant of his constitutional warnings before taking his statement at the hospital. He further testified that he administered these rights from memory, and not from a printed card. When he recited the rights he gave the appellant, both in testimony during the preliminary hearing and at trial, the detective omitted the right to an appointed counsel. Following a discussion held off the record, the prosecutor asked Detective Maze, "Do you recall whether you told [the appellant] or not that he had the right to have an attorney appointed for him if he wanted one?" The detective testified that he had so advised the appellant, but defense counsel objected to the question as leading. The trial court sustained the objection and instructed the prosecutor that he could ask the witness if he told the appellant anything else and allow the witness to indicate what else had been said, if anything. The prosecutor then asked the witness if he recalled whether the rights to which he had just testified were all that he had administered to the appellant before taking his statement. Detective Maze responded that he had also advised the appellant that he had the right to have an attorney present, and that if he could not afford one, one would be appointed for him, and that he had the right to stop talking to the detective at any time. Thereafter, defense counsel objected to the admission of the statement on the basis that the Miranda warnings administered to him were defective. The trial court held that, although the testimony concerning the rights administered was originally faulty, further testimony indicated that he fully advised the appellant of his rights before questioning him.
"`Whether to allow or disallow a leading question is within the discretion of the trial court and except for flagrant violation there will not be reversible error.' Bradford v. Stanley, 355 So.2d 328, 331 (Ala.1978)." Taylor v. State, 666 So.2d 36, 63 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala.1995). See also Seagroves v. State, 726 So.2d 738, 744 (Ala.Cr.App.1998). Section 12-21-131, Ala.Code 1975, states that "[l]eading questions are generally allowed in cross-examinations and only in these, but the court may exercise a discretion in granting the right to the party calling the witness and in refusing it to the opposite party when, from the conduct of the witness or other reason, justice requires it." In the present case, the district attorney's question was necessary to clarify Detective Maze's testimony. It is not necessary that officers administer the Miranda warnings using exact language or terminology, rather the accused must be fully informed of his rights before questioning.
In Putman v. State, 649 So.2d 1328, 1330 (Ala.Cr.App.1994), the defendant contended that his statement was erroneously allowed into evidence because he had not been properly advised of his Miranda rights. The record in that case indicated that the defendant had not been advised before his interview that he could decide at any time to refrain from answering any questions or making any statements. An officer, however, testified that the appellant had been given his full and proper Miranda warnings before he made his statement and before his tape recorder was turned on. This court stated:
"`The Miranda decision requires no talismanic formulation of the warnings to be given to a criminal defendant as to the constitutional rights protected by that decision.' Jones v. State, 456 So.2d 366, 373 (Ala.Cr.App.1983) (citing California v. Prysock, 453 U.S. 355, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981), affirmed, *287 456 So.2d 380 (Ala.1984), cert. denied, 470 U.S. 1062, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985)). Where `warnings were given but one version was defective or incomplete ... [or] deficient in some respect, it suffices that the other set of warnings was complete and correct. This may be a sensible result when the difference between the two sets of warnings is merely that something was omitted from one of them.' 1W. LaFave & J. Israel Criminal Procedure § 6.8(c)(1984)."
Putman, 649 So.2d at 1330. See also Siebert v. State, 555 So.2d 772, 776 (Ala.Cr. App.), aff'd, 555 So.2d 780 (Ala.1989).
In the present case, the trial court ruled that the district attorney's question was leading. The trial court, however, allowed the witness to respond to the district attorney's properly phrased question and was present and able to consider the witness's testimony and his demeanor on the witness stand before determining that his responses were credible and admissible. There was no abuse of discretion in the trial court's allowing this testimony by Detective Maze, and in determining that the appellant was fully and properly informed of his constitutional rights before he made his statement.

VIII.
The appellant argues that his statement should be suppressed because, he says, it is the fruit of an unlawful detention. Specifically, the appellant argues that his statement was made following a warrantless arrest for which there were no exigent circumstances, and that there were no intervening circumstances between the statement and arrest. The record indicates that the appellant failed to object on this ground at trial; therefore, this issue is reviewable pursuant to the plain-error rule. Rule 45A, Ala.R.App.P.
In Alabama, an officer may conduct a warrantless arrest when a felony has been committed and the officer has reasonable cause to believe that the person being arrested has committed that felony. § 15-10-3, Ala.Code 1975. As long as reasonable or probable cause exists, no exigent circumstances are required before the officer may affect the arrest. Probable cause would exist if it was reasonable for the officer to believe, pursuant to the facts and the circumstances within his or her knowledge, that an offense was committed and that the suspect committed the offense.
"As we stated in Smith v. State, 727 So.2d 147 (Ala.Cr.App.1998), aff'd, 727 So.2d 173 (Ala.1999):
"`Section 15-10-3(3), Ala.Code 1975, provides that an officer may arrest someone without a warrant when he has reasonable cause to believe that the person arrested committed a felony. [See also Rule 4.1(a)(1)(i), Ala.R.Crim.P.] "`Reasonable cause is equated with probable cause.'" Sockwell v. State, 675 So.2d 4 (Ala.Cr.App. 1993), aff'd, 675 So.2d 38 (Ala.1995). "Probable cause is knowledge of circumstances that would lead a reasonable person of ordinary caution, acting impartially, to believe that the person arrested is guilty." Sockwell, 675 So.2d at 13.
"`"Probable cause to arrest exists when, at the time the magistrate issues the warrant or the officer makes the arrest, there are reasonably trustworthy facts and circumstances sufficient, given the totality of the circumstances, to lead a reasonable person to believe there is a fair probability that the suspect is committing or has committed an offense."
*288 Swain v. State, 504 So.2d 347 (Ala.Cr. App.1986), citing Fifteenth Annual Review of Criminal Procedure; United States Supreme Court and Courts of Appeal 1984-85, 74 Geo. L.J. 499, 518 (1986). As concerns probable cause, we note that the Alabama Supreme Court has held:
"`"Probable cause exists if facts and circumstances known to the arresting officer are sufficient to warrant a person of reasonable caution to believe that the suspect has committed a crime. `In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act....' `"The substance of all the definitions of probable cause is a reasonable ground for belief of guilt."` `Probable cause to arrest is measured against an objective standard and, if the standard is met, it is unnecessary that the officer subjectively believe that he has a basis for the arrest.' The officer need not have enough evidence or information to support a conviction in order to have probable cause for arrest. Only a probability, not a prima facie showing, of criminal activity is the standard of probable cause."
"`Dixon v. State, 588 So.2d 903, 906 (Ala.1991) (citations omitted).
"`In determining whether probable cause for a warrantless arrest exists, this court must examine the totality of the circumstances surrounding the arrest. Sockwell, supra.'"
"727 So.2d at 156-57."
Melson v. State, 775 So.2d 857 (Ala.Cr. App.1999).
In the present case, the record indicates that the appellant was arrested while he was a patient in the intensive care unit of the Boaz-Albertville Hospital, before Detective Maze arrived. Before his arrival, Detective Maze had been present at the scene of the murder and had met and interviewed Marcus Carter. The statement given by Carter indicated that the appellant had been involved in the murder. The statement recounted the circumstances and details of the planning and staging of the offense, as well as what had transpired following the murder. As a result of this information, Detective Maze had begun looking for the appellant and had located him at the hospital. Thereafter, Detective Maze took the appellant's statement.
Because the appellant's arrest was lawful, his statement was admissible; the statement was not the "fruit of the poisonous tree." Kolonusz v. State, 552 So.2d 1075, 1078 (Ala.Cr.App.1989).

IX.
The appellant argues that the trial court failed to instruct the jury that it was to make the ultimate decision regarding the voluntariness of his statement. The record indicates that the following charge was given to the jury by the trial court:
"With the [sic] regard to the alleged statement of the Defendant, you may consider all the facts and circumstances surrounding the taking of the alleged statement in determining the weight or credibility, if any, which you give the alleged statement.
"In exercising your exclusive right of determining the credibility of the evidence or the weight to which the evidence is properly entitled, you are to consider the circumstances under which the alleged statement was obtained and *289 the methods by which it was supposedly elicited including the situation and mutual relation of the parties."
The appellant argues that this instruction did not inform the jury that it must determine whether the statement was voluntary before considering the statement as evidence. However, the jury was clearly instructed that it could give some or no weight or credibility to the statement and, in determining what weight to give it, consider the circumstances under which the statement was obtained and the methods used by the authorities in eliciting the statement. The appellant cites Bush v. State, 523 So.2d 538, 560 (Ala.Cr.App. 1988), and Ex parte Singleton, 465 So.2d 443, 446 (Ala.1985), to lend support to the principle that the trial court should have instructed the jury to consider the voluntariness of the confession; however, those cases addressed situations in which the trial court had informed the jury that it had already made a determination that the confession was voluntary and admissible, before the jury's evaluation of the statement; thus, the appellant's reliance on these cases is misplaced.
The trial court's instruction to the jury concerning its role in evaluating the statement was proper and complete. As the trial court's charges substantially and fairly covered this rule of law, the appellant suffered no prejudice. Freeman v. State, 722 So.2d 806, 810 (Ala.Cr.App.1998).

X.
The appellant argues that the trial court's instruction that informed the jury that there was an audio portion of a videotape that they were not permitted to hear constituted a comment on the evidence and improperly encouraged the jury to speculate as to this evidence.
During the testimony of one of the investigating officers who was present at the scene of the offense, the prosecutor offered to show the videotape and stated that, if the appellant had an objection, it should be addressed outside the presence of the jury. Thereafter, the trial court held a bench conference in which defense counsel indicated that he had been made aware of the videotape only one or two days before the discussion,[1] at which time he had been able to see most of the tape. He stated that he was advised two days prior that there had been four copies of the tape available, but the defense was not provided with a copy. A copy of a document indicating that a tape had been available to the defense counsel previously was produced and one of the defense counsel indicated that he had been aware of the tape. However, because one of the defense counsel had not seen the tape, the trial court decided that the parties and attorneys should view the tape before the jury was allowed to see it. The tape was then viewed outside the presence of the jury, and the prosecutor stated that the videotape did have sound, but that he had turned it off. The trial court stated, "All right. I assume everybody agrees that's appropriate." One of the defense counsel indicated that he would like to hear the sound during part of the tape and the trial court asked him if he wanted the court reporter to transcribe that portion. Defense counsel responded that he did not and the tape was played. Defense counsel then objected to the videotape being shown to the jury on the grounds that its prejudicial effect allegedly outweighed any probative value. This objection was based on the length of play of *290 the camera covering the body, as well as the cumulative effect of the photographs. Defense counsel also requested limiting instructions to inform the jury not to assume that the date and time indicated on the video was correct. The trial court agreed to the instruction and the tape was subsequently played for the jury. Defense counsel raised its prior motions and objections concerning the tape at that time; the trial court overruled the objection and stated to "[b]e sure the sound is off." The prosecutor then asked the court's permission to have the witness, who was the investigating officer, answer questions concerning the rooms being depicted in the video and defense counsel indicated that he had no objections to him doing so.
After the tape was shown to the jury, there was a discussion held outside the presence of the jury in which defense counsel inquired as to whether the court intended to allow the tape to go back to the jury room during deliberations. The trial court responded, "I don't intend to let the tape go back to the jury room with the machine to play it with. If they should request it, we'll cross that bridge when we get to it." Thereafter, the trial court asked defense counsel to restate his objection and defense counsel stated that the tape's prejudicial effect outweighed its probative value and, further stated, "We of course intended to object if the Court intended to let it go back with the machine for them to view over and over again." The trial court overruled the objection and reserved "any question of letting the machine go back there with them." Subsequently, after the jury had retired to deliberate, the bailiff notified the trial court that the jury wished to return to the courtroom. The trial court indicated on the record that two inquiries had been made by the jury, the second of which was whether they could have a VCR to review the videotape. The trial court stated to the parties:
"My inclination on that is to let them come back in here and show them the tape again.
"I fear if we sendif we say, no, of course they are going to feel like they're being deprived of something. I don't know who that gores or hurts. But if we send a VCR in there, my experience with that thing is that they may play with it for 45 minutes before they get it to work. They also are liable to play the sound portion of it which we have agreed they shouldn't.
"Does anybody have any strenuous objection to bringing the VCR in here, plugging it in, and
". . . .
"[Defense counsel]: I don't have any objection to it.
"THE COURT:[We]showing it to them in here."
The parties then ensured that the VCR was working properly and the jury was brought back into the courtroom to view the tape. When the jury was present, the trial court instructed it as follows:
"We are going to do something a little bit different from what you have requested. We are going to replay it for you in here. For two reasons: One practical and one legal.
"The practical reason is as cantankerous as this VCR is, you might never get it to work back in the jury room. The legal reason is that only the video portion of that tape was submitted to you. The audio portion if you noticed when we played it before was blanked out. That part has not been submitted to you. Would one of the gentlemen who knows how to operate that thing"
*291 The videotape was then played. Thereafter, defense counsel raised only the objections previously raised.
Because this instruction by the trial court was not objected to on the grounds now raised on appeal, this issue must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P. The appellant argues that this instruction violated the rule of law stated in Ex parte Washington, 507 So.2d 1360 (Ala.1986), by improperly indicating to the jury that there was vital evidence that could not be submitted to it because of the rules of evidence and presumably the evidence would have been detrimental or prejudicial to the appellant. In Ex parte Washington, the prosecutor, during his summation, indicated that the State had certain evidence that it could not present to the jury because of the court's rules; the Alabama Supreme Court found this to be reversible error. The Court held that "[t]he prejudicial impact of such a statement on the jury is all too evident: If the prosecutor had been allowed to produce this evidence, the defendant's guilt would thereby have been proved." Id., at 1362. See also People v. Jackson, 7 N.Y.2d 142, 196 N.Y.S.2d 79, 164 N.E.2d 381 (1959) (wherein identity was the sole issue in the case and, although the witness had been unable to pick the defendant from the lineup, the prosecutor during his closing stated to the jury that although the witness did not pick the defendant "there was good reason for this" and that the prosecutor would be "more than happy to tell you ... why after this trial is over"). Similarly, in Thomas v. State, 601 So.2d 191 (Ala.Cr.App.1992), this Court found reversible error in a prosecutor's display to the jury during his closing argument of an alleged tape recording of the conspiracy at issue, although it was never introduced into evidence.
However, in the present case, when the trial court's instructions to the jury are read in context of the record, it is clear that the trial court was explaining to the jury why its request was not being honored. There was no indicia that the audio portion of the video contained any material pointing to the appellant's guilt. In Collins v. State, 611 So.2d 498 (Ala.Cr.App. 1992), the defendant had contended that the trial court's decision to allow the jury to view his videotaped statement a second time after it had begun deliberations was reversible error because of the manner in which the tape was received. During the trial a short portion of the tape had intentionally been deleted from the jury's viewing. Both parties had stipulated to that deletion, but, because of this erasure, the videotape could not be allowed back to the jury room. The trial court, in Collins v. State, supra, therefore charged the jury as follows:
"I think rather than send you all back to the jury roomif we do that, we are going to have to set it up here. You will recall that during the viewing process it became necessary to stop the tape at one point and then start it back up. So, I couldn't just send you all back with the television monitor and the tape and say, `Watch it.' I would need to have [the prosecutor] go through the same process and monitor it and stop it at the appropriate point."
This Court determined that the trial court did not err in allowing the jury to watch the videotape a second time while it monitored the viewing. The trial court's instructions in the present case, as in Collins v. State, supra, simply explained to the jury why it was not to be allowed to view the tape independently in the jury room during its deliberations. The trial court gave no indication that the jury was being prevented from viewing the tape because it contained some matter prejudicial to the *292 appellant. See also McGhee v. State, 253 Ga. 278, 281, 319 S.E.2d 836, 840 (1984) (the trial court instructions to jury to disregard testimony of the first polygraph test, which was not admitted into evidence, did not constitute a comment on the evidence or testimony, but was a necessary instruction to the jury).
The appellant suffered no prejudice due to the trial court's instructions indicating that an audio portion of the videotape could not be played to them as it was not admitted during the trial; nor was it a comment on the evidence.

XI.
The appellant argues that the trial court improperly granted four of the State's challenges for cause of potential jurors, in violation of Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Specifically, the appellant argues that these challenges for cause were improperly granted because, he says, the court did not determine whether the jurors could, despite their affirmative answers as to whether they had fixed opinions against capital punishment, nevertheless consider the evidence and the instructions given by the trial court and return a verdict of guilty even if this verdict might result in a sentence of the death penalty.
One of the potential jurors challenged for cause by the State indicated that he had known the appellant's father, mother, and sister, for approximately 35 years and that this relationship would influence his decision if he were to serve on the jury. Subsequently, when asked if he could vote for the death penalty under the proper circumstances, the potential juror stated that he could not, and when asked if he would vote against the death penalty, the juror stated that he would do so.
Another of the challenges for cause was made against a potential juror who also said that he knew the appellant's mother and stated, when asked if he could vote for the death penalty under the appropriate circumstances, "I believe I would be dead set against capital punishment." The juror again indicated that he could not vote for the death penalty.
Another of the challenges for cause made by the prosecutor had indicated that she knew two of the alleged accomplices. The potential juror, when asked if she could vote for the death penalty under the appropriate circumstances, stated, "I'm not against capital punishment and the death penalty, but I myself, I couldn't do that."
The final of these challenges for cause concerned a potential juror who had originally indicated that, under the appropriate circumstances, he could vote for the death penalty if he believed that the accused was guilty. However, thereafter, the potential juror indicated that he wanted to make a statement to the court privately. The following then transpired:
"THE COURT: You indicated that you had something you wanted to make us aware of.
"[POTENTIAL JUROR]: Yes, sir. We were asked, you know, if we were any acquaintance with the [appellant's] family or anything. The more I thought about it, I'm sure I went to school with his father and everything.
"THE COURT: That was
"[POTENTIAL JUROR]: Tommy.
"THE COURT: That was obviously several years ago.
"[POTENTIAL JUROR]: Yes, sir.
"THE COURT: Have you and he remained friends since then or was it have you had any contact
"[POTENTIAL JUROR]: Well, I hadn't seen him in a good while, you know, but *293 that's probablyit's been severalI guess several years since I've seen him.
"THE COURT: Were you all close friends in school or just in school?
"[POTENTIAL JUROR]: Well, we were pretty good friends, you know. We run around some together when we were in school. And then maybe some after, you know, when we got out of school.
"Seemed like I worked with him maybe once or twice on some construction work. But the more I thought about it, you know, I'm sure, you know, I'm sure that's hishis daddy is the one I went to school with, Tommy.
"THE COURT: Any questions for [potential juror] from the State or the Defense?
"[PROSECUTOR]: [Potential juror,] would that fact influence you if you were a juror on this case?
"[POTENTIAL JUROR]: Ah, I don't know. You know.
"[PROSECUTOR]: Well, you know, do you feel like you were close enough to Tommy that if you were to make a decision in this case that waswell, let's just say that you voted to convict him, on the evidence that you found him guilty, that that would place you in a difficult position?
"[POTENTIAL JUROR]: It might, you know. We were pretty good friends, you know, when we were in school and stuff, you know, and I just....
"[PROSECUTOR]: Okay, Thank you.
"[POTENTIAL JUROR]: You know, I want to be honest about it, you know.
"[PROSECUTOR]: That's all we're asking.
". . . .
"[PROSECUTOR]: To take it just one step further, assuming that you were on the jury and you were able to convict the Defendant, assuming that the State proved its case as to capital murder and you were able to convict the [appellant], would you be able to, under the appropriate circumstances, vote for the death penalty knowing the family like you do or would you feel that you would just vote in favor of life without parole because of your relationship to the father?
"[DEFENSE COUNSEL]: I object to the question, Your Honor. I think it attempts to commit this venireman to a particular cause of action. I think it's also prejudicial.
"[PROSECUTOR]: Well, Judge, if he is committed to that position before he goes into the trial, that's something the Court needs to know
"THE COURT: I'll overrule and let the juryman answer it the best he can.
"[POTENTIAL JUROR]: I don't think, you know, I don't think I could vote for the death penalty.
"[PROSECUTOR]: Okay. Thank you. Appreciate your honesty."
Arguing the need to have had follow-up questioning of these potential jurors, the appellant refers to a question subsequently asked by defense counsel to the venire panel as a group: "I'm asking that if you hear something from the Judge that you just flat don't like, okay? Or goes counter to something that you believe in, and the Judge tells you that's the law, is there anyone on this panel who is not going to follow the directions of the Judge pertaining to the law?" There were no responses to this question. The appellant argues that this failure to respond indicates that these potential jurors could have set aside their feelings of opposition to the death penalty, and performed their duty as jurors.
"This court has stated:

*294 "`"The proper standard for determining whether a prospective juror may be excluded for cause because of his or her views on capital punishment is `whether the jury's views would "prevent or substantially impair the performance of his duties as a juror in accordance with the instructions and his oath."' Wainwright v. Witt, 469 U.S. 412, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985); Gray v. Mississippi, 481 U.S. 648 [657-58], 107 S.Ct. 2045, 2051 [95 L.Ed.2d 622] (1987). `The crucial inquiry is whether the venireman could follow the court's instructions and obey his oath, notwithstanding his views on capital punishment.' Dutton v. Brown, 812 F.2d 593, 595 (10th Cir.), cert. denied, Dutton v. Maynard, [484 U.S. 836,] 108 S.Ct. 116, 98 L.Ed.2d 74 (1987). A juror's bias need not be proved with `unmistakable clarity' because `juror bias cannot be reduced to questionanswer sessions which obtain results in the name of a catechism.' Id."
"`Martin v. State, 548 So.2d 488, 490 (Ala.Cr.App.1988), aff'd, 548 So.2d 496 (Ala.), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989).'

"Bush v. State, 695 So.2d 70, 109 (Ala. Cr.App.1995).
"`"A trial judge's finding on whether or not a particular juror is biased `is based upon determinations of demeanor and credibility that's peculiarly within a trial judge's province.' [Wainwright v.] Witt, 469 U.S. [412, 428], 105 S.Ct. [844,] 855, [83 L.Ed.2d 841 (1985) ].
"`"That finding must be accorded proper defence on appeal. Id. `A trial court's rulings on challenges for cause based on bias [are] entitled to great weight and will not be disturbed on appeal unless clearly shown to be an abuse of discretion.' Nobis v. State, 401 So.2d 191, 198 (Ala.Cr.App.), cert. denied, Ex parte Nobis, 401 So.2d 204 (Ala.1981).
"`Martin v. State, 548 So.2d 488, 490 (Ala.Cr.App.1988), aff'd, 548 So.2d 496 (Ala.), cert. denied, 493 U.S. 970, 110 S.Ct. 419, 107 L.Ed.2d 383 (1989).'
"Johnson v. State, 651 So.2d 1085, 1087 (Ala.Cr.App.1994). See also Smith v. State, 646 So.2d 704 (Ala.Cr.App.1994)."
Arthur v. State, 711 So.2d 1031, 1083 (Ala. Cr.App.1996), aff'd, 711 So.2d 1097 (Ala. 1997).
The potential jurors who were removed for cause based on their views concerning the death penalty, all indicated that they would not be able to properly perform their duties because of their views on capital punishment. Moreover, the potential juror last discussed above, although originally indicating that he could consider the death penalty, clearly changed his response and, when his responses are taken as a whole, indicated that he could not consider the death penalty, despite the trial court's instructions, because of his relationship to the appellant's father.
"`"Where a juror vacillates in her response to voir dire, her answers must be `taken as a whole.' Knop [v. McCain, 561 So.2d 229, 233 (Ala.1989)]; Ex parte Beam, 512 So.2d 723, 724 (Ala.1987). Thus, when the aggregate effect of her response tends to verify the existence of `deep-seated impressions' she must be excluded for cause. Knop, 561 So.2d [at] 233." Dixon v. Hardey, 591 So.2d 3, 7 (Ala.1991)' Smith v. State, 646 So.2d 704, 714 (Ala.Cr.App.1994). As the Alabama Supreme Court noted in Roberts v. Hutchins, 613 So.2d 348, 350 (Ala.1993):
"`We emphasize that a trial judge is given broad discretion in regard to sustaining or denying a challenge for cause, and his decision is therefore *295 entitled to great weight and will not be interfered with unless it is clearly erroneous and equivalent to an abuse of discretion. Kumar v. Lewis, 561 So.2d 1082 (Ala.1990). Here, it is clear that the trial court based its determination on its own observations and impressions of he potential jurors, not upon an inadequate application of own opinion in Dixon [v. Hardey, 591 So.2d 3 (Ala.1991).]. The record indicates no abuse of the trial court's discretion; therefore, the judgment is affirmed.'"
Arthur v. State, supra, at 1085-86.
Based on the potential juror's responses and the broad discretion given to a trial judge in sustaining or denying a challenge for cause, we find that the trial court's decisions to grant these challenges for cause were not clearly erroneous.

XII.
The appellant alleges that the trial court improperly excluded a veniremember from serving on his jury, in violation of § 12-16-60, Ala.Code 1975. Specifically, the appellant refers to the potential juror previously discussed in Part II of this opinion. The appellant argues that, because a trial court may only disqualify for reasons such as citizenship, literacy, physical ability, and the right to vote, when he excused this potential juror because of her views on capital punishment, he violated the statute concerning jury qualification. § 12-16-55. However, this potential juror was excused pursuant to § 12-16-63(b), Ala.Code 1975, as discussed in Part II, and was not disqualified for jury service. The trial court's statement to this potential juror indicating that she could serve on a jury in a civil case further supports this conclusion. Thus, this argument is without merit.

XIII.
The appellant argues that the trial court unconstitutionally and arbitrarily denied him youthful offender treatment. Specifically, the appellant argues that based on the presentence report the trial court originally held that the appellant should be granted youthful offender status and that after the prosecutor made a proffer concerning the allegations against him, the trial court denied him youthful offender status. The appellant argues that this decision, based solely on the fact that he was charged with a serious crime, was improper. Moreover, the appellant argues that because the trial court failed to set forth the reasons for denying him youthful offender status, any effective review of this decision becomes an impossibility.
The record contains the transcript of the hearing held pursuant to the appellant's application for youthful offender status. Moreover, the record indicates that the probation officer made a background investigation and issued a written report, which the trial court reviewed. The trial court then asked if either party had any evidence to present; the parties responded negatively. The trial court then asked the prosecutor what he would expect the evidence to establish. The trial court indicated that it had reviewed Ex parte Farrell, 591 So.2d 444 (Ala.1991), which held that an individual may not be denied youthful offender status based solely on the nature of the charge. However, the case further established that the nature of the fact situation on which the charge was based may be grounds for denying youthful offender status. The trial court then stated, "I'll give the State an opportunity to show me what the nature of the fact situation is, but if we stopped at this point, in my judgment, based upon this report alone, the Court would have no option but to grant youthful offender status." The trial court then granted a recess in order for *296 the State to answer the trial court's question concerning the factual basis of the charge. Following the recess, the prosecutor gave a detailed rendition of the facts and circumstances of the offense, including exactly what they believed the evidence would prove that the appellant had done. The trial court then asked defense counsel if he believed that the State would be able to produce evidence to establish the factual basis that the prosecutor had just outlined. Defense counsel stated that he believed that the prosecutor could do so. The trial court then asked if either party had any other evidence to offer or any further argument to make, whereupon defense counsel emphasized the appellant's age and the fact that he had no prior criminal record. Defense counsel affirmed that the only reason for denying the appellant youthful offender treatment would be the nature of the allegation made against him. The trial court then stated:
"I would agree that of course the mere fact that he is charged with capital murder would not be sufficient for the Court to deny youthful offender status on him.
"On the other hand, if the State's evidence does prove what the district attorney has stated, it would appear that this was not a casual thing, that it was not a spur-of-the-moment thing. Rather, it was preplanned, cold-blooded and totally unjustifiable.
"The Court in Ex parte Farrell (sic) mentions a minor being charged with beating an elderly person nearly to death with a baseball bat as an example of where youthful offender status would be proper to be denied.
"Certainly this would appear to be within that parameter and then some if the State's case appears as the district attorney has stated."
The trial court then denied youthful offender status.
"In Ex parte Farrell, 591 So.2d 444, 449 (Ala.1991), the Alabama Supreme Court stated that the nature of the criminal charge, without more, cannot be used as the basis for denying youthful offender status. However, the Court held that `the nature of the fact situation on which the charge is based may be a sufficient reason for denying youthful offender status.' Id. (emphasis original). Moreover, where the record does not support the contention that youthful offender status was denied solely on the basis of the crime charged, this Court will not reverse the trial court's decision to deny youthful offender status. Burks v. State, 600 So.2d 374, opinion after remand, 600 So.2d 387 (Ala.Crim.App. 1991)."
Miller v. State, 650 So.2d 940, 945 (Ala.Cr. App.1993), reversed on other grounds, Ex parte Miller, 650 So.2d 947 (Ala.1994).
In the present case, the trial court clearly was not denying youthful offender status based simply on the charge and, in fact, acknowledged that it could not do so. The trial court's decision was based on the facts surrounding the offense and, in light of the factual basis for the present offense, the trial court did not clearly abuse its discretion. Smith v. State, 623 So.2d 369 (Ala.Cr.App.1992). "The trial court has almost absolute discretion in deciding whether to grant or to deny a defendant treatment as a youthful offender, and that decision will not be overturned absent an affirmative showing that the decision was arbitrary or that it was made without some investigation or examination of the defendant. Burks v. State, 600 So.2d 374 (Ala.Cr.App.1991); Barnett v. State, 348 So.2d 512 (Ala.Cr.App.), cert. denied, 351 So.2d 571 (Ala.1977)." Hyde v. State, 778 So.2d 199, 224 (Ala.Cr.App.1998). Moreover, the trial court is not required to enlist a probation officer for an investigation, *297 nor is it required to conduct a formal hearing in every case. Hyde v. State, supra. "`Neither is the trial court required to articulate on the record the reasons for denying youthful offender status to a defendant. Garrett v. State, 440 So.2d 1151 (Ala.Cr.App.1983). In deciding whether or not to accord youthful offender status to an accused person, the discretion of the trial judge is virtually absolute. Morgan v. State, 363 So.2d 1013 (Ala.Cr. App.1978).'" J.F.B. v. State, 729 So.2d 355 (Ala.Cr.App.1998), quoting Goolsby v. State, 492 So.2d 635, 636 (Ala.Cr.App. 1986). There was no impropriety in the trial court's decision to deny youthful offender status to the appellant based on the facts underlying the present offense.

XIV.
The appellant argues that his indictment failed to inform him adequately of the charges against him. Specifically, the appellant argues that the indictment was unconstitutionally vague in that it charged that he had committed a "theft of lawful money, or currency of the United States of America the exact description and denomination of which to the Grand Jury is otherwise unknown." He argues that the use of the language "theft of lawful money, or currency" insufficiently informed him of the nature of the charge against him.
In Windsor v. State, 683 So.2d 1027 (Ala.Cr.App.1994), aff'd, 683 So.2d 1042 (Ala.1996), the defendant was charged with capital murder for having committed intentional murder during the course of robbery in the first degree. The defendant argued that his indictment was deficient because it did not set out the value of the currency taken during the offense. This Court held that, because robbery is an offense committed against the person, the value of the property taken during a robbery is not an element of the offense. Id., at 1032. Therefore, an indictment charging robbery need not set out the amount or the value of the property taken. In so holding, this Court quoted Grace v. State, 431 So.2d 1331, 1333 (Ala.Cr.App.1982), wherein we stated:
"`Prior to the enactment of § 13A-8-40, et seq. of the 1975 Code of Alabama, there was no statutory robbery in Alabama and the offense was derived from the common law. See Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962); Watts v. State, 53 Ala.App. 518, 301 So.2d 280 (1974). Common law robbery required a "taking" of property from the person of another, Wilson v. State, 268 Ala. 86, 105 So.2d 66 (1958), although the amount or value of the property taken was immaterial, Sanders v. State, 289 Ala. 224, 266 So.2d 802 (1972); Harris v. State, 44 Ala.App. 449, 212 So.2d 695 (1968).
"`The present robbery statutes, however, do not require a "taking" of property, Marvin v. State, 407 So.2d 576 (Ala.Cr.App.1981); Ala.Code 1975 §§ 13A-8-40 through 13A-8-44 (1975)(Commentary), so that not only is the value of the property immaterial, but also the indictment need not allege an actual theft to constitute the offense. The operative words of the current robbery statute are "in the course of committing a theft," which includes an attempted theft, Marvin v. State, supra, rather than the common law element of an actual "taking from the person."`"
Id. at 1032.
Thus, because a statement of the amount or value of the property taken is immaterial, as is the actual theft, the indictment need not have contained such information, and the appellant's indictment in the present case was not unconstitutionally vague.

*298 XV.
The appellant argues that he was denied his right to a fair and impartial jury because the trial court was not present when certain potential jurors were excused for reasons of hardship, see § 12-16-63, Ala.Code 1975, and these potential jurors were excused without its direction. The appellant submits that, although the trial court stated that the potential jurors who were excused by a third party were being excused under its direction, the record indicates otherwise. The appellant fails to state any specifics or indicate anywhere in the record that the presiding judge failed to direct these excusals.
The record indicates that on March 11, 1994, a hearing was held at which a number of pretrial matters and motions were discussed. During that hearing, the following transpired:
"The next motion that I have is a motion for personal service on all potential jurors who do not respond to their summons and for the Court to determine all excusals. That motion was filed on March 8. As a practical matter, gentlemen, it comes too late.
"We, of course, will expect to present you a fair and impartial panel of jurors with at least 36 to strike from.
"We select juries in this county using the alternate method which means from the driver's licenses by a computer, a large number of which result in incorrect addresses and that sort of thing. Especially since we, under the 911 program, have changed half the people in the county's mailing addresses. So weI expect that we will have substantial number of people who did not receive their summons.
"Ms. Malone, under the direction of the presiding judge has been handling excusals. The Court of course will handle them atfor those who are present on Monday morning in response to their summons.
"But in terms of getting out and getting the sheriff to personally serve them, that motion is denied."
The trial court clearly stated that the excusals were done under its direction and that the individual excusing the jurors had been authorized to do so by the trial court. "In Windsor v. State, 683 So.2d 1021, 1026 (Ala.1994), the Alabama Supreme Court held that it was not error for the trial judge to delegate to other court officials the authority to excuse jurors or for that other official to excuse potential jurors outside the defendant's presence prior to trial." Burgess v. State, [Ms. CR-93-2054, November 20, 1998] ___ So.2d ___ (Ala. Cr.App.1998).
Moreover, because the appellant fails to submit any evidence that the trial court did not direct the excusals or that the Court committed any sort of fraud, we adhere to the presumption that no such legal fraud or impropriety existed in the method used to select the jurors.
"The Alabama Supreme Court further stated in Windsor:

"`This [suggestion of impropriety in excusing jurors] is nothing like the proof of fraud required by § 12-16-80 Ala.Code 1975, even though the word "fraud," as used in the statute, is "a relative term which `includes all acts and omissions which involve a breach of legal duty injurious to others'" and even though "a legal fraud is all that is required by the statute for a venire to be quashed." Kittle v. State, 362 So.2d 1271, 1273 (Ala.1978) (citation omitted). "There is a presumption that no legal fraud exists in the system used in the selection of jurors, in the absence of proof to the contrary, or an offer of such proof." Nixon v. *299 State, 291 Ala. 657, 286 So.2d 315, 317 (1973).'"
Dobyne v. State, 672 So.2d 1319, 1327 (Ala. Cr.App.1994), aff'd, 672 So.2d 1354 (Ala. 1995).
Therefore, in the present case, the potential jurors were properly excused before trial for reasons of hardship.

XVI.
The appellant argues that the trial court's failure to order a change of venue deprived him of due process and a fair trial by an impartial jury. The appellant argues that he was entitled to a change of venue based on extensive coverage of the offense by the media and the small size of Marshall County. Specifically, the appellant cites an article published the day before jury selection as having been unduly prejudicial and damaging to his case. The appellant cites no evidence of prejudicial impact on prospective jurors, and the record indicates that the jurors were extensively questioned on voir dire to reveal any possible prejudice due to media exposure before trial.
"`The burden is on the defendant seeking a change of venue to show to the reasonable satisfaction of the Court that he cannot receive a fair and impartial trial. Such motion is addressed to the sound discretion of the trial court and will not be disturbed on appeal in the absence of gross abuse. Moore v. State, 52 Ala.App. 179, 290 So.2d 246 (Ala.Cr. App.1974); Hurst v. State, 54 Ala.App. 254, 307 So.2d 62 (Ala.Cr.App.1974), cert. denied, 293 Ala. 548, 307 So.2d 73 (Ala.1975).' Hurley v. State, 335 So.2d 183, 188 (Ala.Cr.App.), cert. denied, 335 So.2d 188 (Ala.1976). `Even if the record did show evidence of widespread pretrial publicity, such evidence standing alone does not entitle appellant to a change of venue. There must be a showing that pretrial publicity resulted in actual prejudice to appellant, Dolvin v. State, 391 So.2d 666 (Ala.Cr.App. 1979), aff'd, 391 So.2d 677 (Ala.1980).' Anderson v. State, 455 So.2d 957, 959 (Ala.Cr.App.1984). `"Except in the situation where there is a showing of `inherently prejudicial publicity which has so saturated the community, as to have probable impact upon the prospective jurors,' the trial court's primary responsibility in dealing with allegedly prejudicial pretrial publicity is [to determine] whether, as a result of such publicity, it is reasonably unlikely that the defendant can secure a fair and impartial trial."' Ex parte Kennedy, 472 So.2d 1106, 1112 (Ala.1985), cert. denied, Kennedy v. Alabama, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985), quoting Anderson v. State, 362 So.2d 1296 (Ala.Cr.App.1978). Thus, where an appellant had attached several newspaper articles and a magazine article to his motion for change of venue, this court found that prejudice was not sufficiently proved. Hurley v. State, supra."
Harris v. State, 500 So.2d 1292, 1294-95 (Ala.Cr.App.1986).
In Donahoo v. State, 552 So.2d 887, 889-91 (Ala.Cr.App.1989), the defendant argued that he was entitled to a change of venue based on a number of newspaper articles that mentioned the defendant or his case. Several articles dealt exclusively with the defendant's case; one was an editorial. Moreover, in many of the articles, the defendant's previous conviction was mentioned and was said to have been overturned on "`a technical matter'" or "`a technicality.'" The defendant alleges that this was highly prejudicial. This Court held that, although the pretrial publicity was clearly extensive in Donahoo v. State, supra, such publicity alone did not indicate that the defendant could not receive *300 a fair and impartial trial. Id. at 890, citing Fike v. State, 447 So.2d 850, 857 (Ala.Cr.App.1983). In Donahoo, this Court quoted Anderson v. State, 362 So.2d 1296, 1298-1300 (Ala.Cr.App.1978):
"`Newspaper articles, without more, are not evidence on a motion for change of venue; their effect must be shown. Beddow v. State, 39 Ala.App. 29, 96 So.2d 175 (1956), cert. denied, 266 Ala. 694, 96 So.2d 178 (1957), 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958).
"`. . . .
"`... Generally, newspaper articles which objectively report the commission of a crime, do not carry inflammatory headlines, and do not editorialize on the facts in a manner to inflame the community or create an atmosphere or prejudice are an insufficient basis on which to grant a motion for change of venue. Gray v. State, 56 Ala.App. 131, 319 So.2d 750 (1975).'"
Id. This Court continued by noting that the editorial opinion submitted on the motion for change of venue, however, did contain "`sensational, accusational or denunciatory statements' concerning the appellant." Id. The Court stated:
"The editorial, entitled `Trivia Clogs the Courts' was critical of a justice system which because of `[a] trivial technicality, one which seems, if anything, error without injury, sends [Donahoo's] case back for a new trial.' The editorial concluded: `What has happened to common sense in the justice system? With all other charges proved, is such a triviality so important as to cost taxpayers a new trial?'
"Although this article was inflammatory, this Court cannot say that the publication of this one editorial opinion deemed the pre-trial publicity surrounding this case, as a whole, `inherently suspect.'"
Id. Based on the voir dire questioning, the Court concluded that there was no indication of actual prejudice to require a change of venue. See also Wright v. State, 678 So.2d 1216, 1220 (Ala.Cr.App.1996) (wherein the appellant argued that he was entitled to a change of venue because of "damaging and inaccurate excessive publicity" based on a newspaper article that gave inaccurate details about the appellant's case; however, this Court concluded that the appellant had failed to show that this publicity had so saturated the community as to effect potential jurors, nor did he show that he had suffered any actual prejudice).
In the present case, the appellant has failed to show that the community was so saturated with prejudicial pretrial publicity that he was denied a fair and impartial trial; nor did he show that any actual prejudice existed against him. "`Absent a showing of abuse of discretion, a trial court's ruling on a motion for change of venue will not be overturned. Ex parte Magwood, 426 So.2d 929, 931 (Ala.), cert. denied, 462 U.S. 1124, 103 S.Ct. 3097, 77 L.Ed.2d 1355 (1983).'" Donahoo v. State, supra, at 889, quoting Ex parte Grayson, 479 So.2d 76, 80 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985). There is no indication of abuse of discretion by the trial court.

XVII.
The appellant argues that the trial court erred in denying his motion seeking the disclosure of the relationships, associations, and ties between the district attorney and prospective jurors. The appellant argues that, because the trial court denied this motion, except as to require the State to disclose any actual prejudice of which it was aware, he was denied his right to an impartial jury. The record indicates, before trial, during a hearing on a number of the motions filed by the appellant, the trial *301 court addressed a motion to require disclosure of any and all information relating to prospective jurors that might be favorable to the defense. The trial court asked for clarification on the motion and defense counsel responded that they were seeking "[a]nything that the district attorney knows that would be favorable that would cause any particular juror to be predisposed one way or the other." The prosecutor responded that such a determination was the purpose of voir dire questioning. The trial court then responded as follows:
"THE COURT: Counsel, let me present an obvious problem which will then be obvious to an appellate court. There areThere's one, of course, the district attorney, three full-time assistant district attorneys, a part-time assistant district attorney, a full-time investigator in the district attorney's office, and, what, a half a dozen ladies that work in there.
"We're in a county of slightly over 70,000 people. Probably a third of those jurors that are summoned will be at least casually known to somebody who works in the district attorney's office who may have gone to school with their cousin or have known them in grammar school or what-have-you.
"Now there's no way in the world as an effective matter that the district attorney's office can divulge all of that. I mean they would probably have to spend 300 hours with each of their employees going over every name on the list to even come up with some idea of such as that.
"Voir dire will of course divulge most of that, you know, of significance. Have any of you had a family member who has been a victim of a crime, those are the sort of things that you ask
"Now, what are you really asking the State to tell you. I guess is what I'm coming down to?
"[DEFENSE COUNSEL]: Basically anything that the State knows that wouldabout any venireman or venire person which would cause such person to have strong feelings or tend to lean one way or another in this case, either for the prosecution or for the defense.
"THE COURT: Counsel, I'm, curious. Let's just say that the District Attorney knew Juror Joe Doe by reputation and knew that he was a very conservative individual by reputation, would you expect the State to disclose that?
"[DEFENSE COUNSEL]: Would depend on how conservative he was, Your Honor. He's a lifelong
"THE COURT: Very conservative.
"[DEFENSE COUNSEL]: Is he a lifelong member of the John Birch Society? Is he a Ku Klux Klansman? Anything on that order I would expect him to divulge.
"THE COURT: [Prosecutor], what is the State's position on what an appropriate order would be?
"[PROSECUTOR]: Judge, weI'd go back to the point said a moment ago, that I think that's the purpose of voir dire.
"You know, literally what [Defense Counsel] is asking in this case is let him know the jurors that I want to leave on the jury panel.
"THE COURT: Gentlemen, I'mI've made a notation on the side of the motion there, but the gist of that is that I will order the district attorney make known to the Defense any actual prejudice known by the district attorney's office as to any juror, but otherwise, your motion is denied. I simply don't think there's any practical way for the State to disclose what you're asking for there."
*302 Thus, the trial court ordered the prosecutor to inform the appellant of any actual prejudice known by the district attorney's office on the part of any potential juror. Thereafter, the trial court addressed the appellant's motion to disclose the past, present relationships, associations, and ties between the district attorney and prospective jurors. The trial court noted that that motion mirrored the appellant's earlier motion. The trial court indicated that the motion was overly broad and that, through voir dire questioning, the appellant could ascertain whether any potential jurors were acquainted with any members of the district attorney's staff. Defense counsel then indicated that the purpose of this motion was in case "a juror does not respond in the affirmative [as to whether he knew any of the district attorney's staff] and if the district attorney knows for example that there's gentleman sitting out there that put campaign signs up for him during his campaign" The trial court then stated that he would "put the district attorney and any assistant district attorney who aides him in the strike of the jury under the duty, which I think they are under as officers of this court, of divulging if they know that any juror has not responded truthfully to a question." The court stated, however, that it would not require them to "take the entire jury list and [go] over the whole thing with his staff and [say], Do you knowhave any connection absolutely in any way with any of these people?" The trial court informed the defense counsel that they could phrase their questions on voir dire to reveal such information.
The record indicates that the trial court granted open-file discovery in the present case; there is no indication or allegation that the appellant was deprived of any information. The prosecutor was placed under a continuing duty to disclose, pursuant to Rule 16.3, Ala.R.Crim.P., and the appellant was allowed full and sweeping voir dire examination of the potential jurors, pursuant to Rule 18.4(c) and (d), Ala. R.Crim.P. The record further demonstrated that potential jurors were asked whether any were acquainted with members of the district attorney's staff. The appellant suffered no prejudice by the denial of this motion.

XVIII.
The appellant argues that the trial court's reasonable doubt instruction was unconstitutional under Cage v. Louisiana, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990). The appellant refers to certain language in the trial court's instruction defining reasonable doubt, specifically, that it is a "fair doubt based on reason and common sense," and that "it's rarely possible to prove anything to an absolute or mathematical certainty." The appellant further cites to the trial court's language that "suspicion" and "conjecture" is not a reasonable doubt. The appellant argues that this language is similar to the language held to be unconstitutional in the charge in Cage v. Louisiana, supra, and, thus, he was denied his right to due process and a fair trial.
"When reviewing a trial court's instructions, `"the court's charge must be taken as a whole, and the portions challenged are not to be isolated from or taken out of context, but rather considered together."' Self v. State, 620 So.2d 110, 113 (Ala.Cr.App.1992) (quoting Porter v. State, 520 So.2d 235, 237 (Ala.Cr.App.1987)); see also, Beard v. State, 612 So.2d 1335 (Ala. Cr.App.1992); Alexander v. State, 601 So.2d 1130 (Ala.Cr.App.1992)." Maples v. State, 758 So.2d 1, 65 (Ala.Cr.App.1999). In the present case, the trial court's entire charge to the jury concerning reasonable doubt was as follows:

*303 "The presumption of innocence alone requires you to acquit the defendant unless you're satisfied beyond a reasonable doubt of the defendant's guilt from all the evidence in the case.
"The attorneys have used the term `reasonable doubt,' I have, and I will attempt to define it for you. A reasonable doubt is a fair doubt based on reason and common sense and arising from the state of the evidence.
"Ladies and Gentlemen, it's rarely possible to prove anything to an absolute or mathematical certainty. On the other hand, suspicion or conjecture is not reasonable doubt. Guess or surmise is not reasonable doubt. Forced or fanciful theories are not reasonable doubt.
"A reasonable doubt may arise not only from the evidence produced but from a lack of evidence."
Following the trial court's instructions to the jury, the appellant made his objections to the charge, including an objection to the trial court's definition of reasonable doubt. Defense counsel stated that "even though the Court has attempted to define reasonable doubt, I think that the definition given to the jury as to reasonable doubt would cause the jury to have confusion beyond what they would normally have with that term." No further objection as to the reasonable doubt instruction was entered; therefore, this ground was not raised before the trial court and must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P.
"In Cage, the United States Supreme Court found that if the trial court defines `reasonable doubt' by using the terms `grave uncertainty,' `actual substantial doubt' and `moral certainty,' a reasonable juror could interpret the instructions to mean that a lesser degree of proof is needed to convict than is required by the due process clause." Lawhorn v. State, 756 So.2d 971, 985 (Ala.Cr.App.1999).
"`"In Cage v. Louisiana, [498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990) ] the United States Supreme Court found that if the instruction equated `reasonable doubt' to `grave uncertainty,' and `actual substantial doubt' and stated that what was required was `moral certainty' a reasonable jury could interpret the instruction to allow a lesser degree of proof to convict than that required by the due process clause. It was the use of all three phrases in conjunction with each other that the Supreme Court determined was unconstitutional in Cage. Gaskins v. McKellar, 500 U.S. 961, 111 S.Ct. 2277, 114 L.Ed.2d 728 (1991)."
"`Sockwell v. State, 675 So.2d 4, 23 (Ala. Cr.App.1993).'"
Price v. State, 725 at 1021.
"`Use of some but not all of the terminology found offensive in Cage does not automatically constitute reversible error.' Taylor v. State, 666 So.2d 36, 56 (Ala.Cr.App.), opinion after remand, 666 So.2d 71 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996) (citations omitted). The instruction given in this case does not equate `reasonable doubt' with `moral certainty' `grave uncertainty' or `actual substantial doubt,' which the United States Supreme Court found to be improper in Cage. Taken as a whole, the instruction was not improper; it was not confusing and it did not lessen the State's burden of proof. Taylor, supra. See also, Ex parte Williams, 640 So.2d 1015, 1023-24 (Ala.1993)."
Hyde v. State, 778 So.2d 199, 222 (Ala.Cr. App.1998).
*304 In the present case, the trial court used none of the language found offensive in Cage v. Louisiana, supra. Moreover, a review of the entire charge reveals that it correctly explains the concept of reasonable doubt. Victor v. Nebraska, 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994).
"`[T]he Court in Victor also stated, "The Constitution does not dictate that any particular form of words be used in advising the jury of the government's burden of proof, so long as `taken as a whole, the instructions correctly convey the concept of reasonable doubt.' Holland v. United States, 348 U.S. 121, 140, 75 S.Ct. 127, 138, 99 L.Ed. 150." 511 U.S. at 22, 114 S.Ct. at 1251. The Court thereby reviewed the jury instruction under attack in the context of the entire charge....'"
Price, supra, at 1022, quoting Williams v. State, 710 So.2d 1276 (Ala.Cr.App.1996).
Moreover, the jury instruction that "suspicion" and "conjecture" is not reasonable doubt was proper. Cf. Smith v. State, 756 So.2d 892, 904 (Ala.Cr.App. 1998) (a trial court's instruction that a reasonable doubt could not be "fanciful," "vague," "speculative," "arbitrary," or "merely possible" was proper as following the language of the Alabama Pattern Jury Instruction: Criminal on a reasonable doubt charge). The trial court's reasonable doubt instruction to the jury adequately conveyed the legal meaning of reasonable doubt.

XIX.
The appellant argues that the trial court diminished the jury's sense of responsibility by repeatedly telling it that its sentence would be advisory only and was merely a recommendation.
The record indicates that, in informing the venire panels as to trial procedures and in informing them as to what would transpire during the guilt phase and, if necessary, the sentencing phase, the trial court stated:
"But if they [the jury] found him [the defendant] guilty of the capital offense, then there would be a second phase of the trial with additional witnesses and additional argument and that sort of thing and the jury would come back with a recommendation to the Court that his punishment be either death or life without possibility of parole.
"Now, that verdict does not have to be unanimous, there's a certain number that would have to vote for it, which I would explain later. But also that verdict is a recommendation in effect to the Court.
"Like it or not, it would be my duty to determine the punishment in the case considering, among other things, the recommendation the jury made in keeping with the instructions that they were given as to how they were to reach a verdict."
Subsequently, the trial court stated:
"After the jury made [its] recommendation, there would be an additional hearing that had nothing to do with the jury before the Court. The jury's recommendation would be one of the factors that would be considered.
"There are a number of rules that apply that you all don't need to know about, but then ultimately, right or wrong, it becomes my decision as to what the Defendant's punishment would be.
"The jury's recommendation would be a very strong factor and the jury would have to make its recommendation assuming that the Court would follow that recommendation be it death or life without parole.

*305 "But you do need to understand it's possible that the jury's recommendation would not be followed. But you would have to assume in making your decision that it would be."
Thereafter, the trial court referred to the jury's "recommendation" when instructing it on how to weigh the applicable aggravating circumstances and mitigating circumstances in arriving at an advisory sentencing verdict. The record further indicates that the appellant failed to object to any of these instructions; therefore, this claim must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P.
"`"Under Caldwell v. Mississippi, 472 U.S. 320, [327], 105 S.Ct. 2633, 2639, 86 L.Ed.2d 231(198), `it is constitutionally impermissible to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere.' However, the comments of the prosecutor and the instructions of the trial court accurately informing a jury of the extent of its sentencing authority and that its sentence verdict was `advisory' and a `recommendation' and that the trial court would make the final decision as to sentence does not violate Caldwell. `[C]omments which accurately explain the respective functions of the judge and jury are permissible under Caldwell "as long as the significance of [the jury's] recommendation is adequately stressed."' Harich v. Wainwright, 813 F.2d 1082, 1101 (11th Cir.1987). Here, neither the prosecutor nor the trial court misrepresented the effect of the jury's sentencing recommendation. The cases of Caldwell, supra; Mann v. Dugger, 817 F.2d 1471 (11th Cir.), vacated, 828 F.2d 1498 (1987); Adams v. Wainwright, 804 F.2d 1526 (11th Cir.1986), modified, Adams v. Dugger, 816 F.2d 1493 (11th Cir.1987); and Hatch, supra, each involved a situation where the prosecutor and the trial court misled the jury as to its critical role in sentencing under state law. In Hooks v. State, 534 So.2d 329 (Ala.Cr. App.1987), this Court reviewed the decisions of other jurisdictions which have confronted this issue and concluded: `The trial judge's and the prosecutor's remarks clearly defined the jury's role in the sentencing scheme. Thus, the jury could not have been confused as to its responsibility in the sentencing process. The remarks made here were a correct statement of the law and did not tend to mislead or misinform the jury. Therefore, we conclude the remarks were not improper under Caldwell, supra.'"
"`548 So.2d at 494.'"
Hagood v. State, 777 So.2d 162, 202-03 (Ala.Cr.App.1998), quoting Travis v. State, 776 So.2d 819, 854 (Ala.Cr.App.1997).
"`"[W]e affirm the principle that, in Alabama, the `judge and not the jury, is the final sentencing authority in criminal proceedings.'" "The jury's verdict whether to sentence a defendant to death or to life without parole is advisory only." "We have previously held that the trial court does not diminish the jury's role or commit error when it states during the jury charge in the penalty phase of a death case that the jury's verdict is a recommendation or an `advisory verdict.'"'"
Price, supra, at 1026, quoting Taylor v. State, 666 So.2d 36, 50-51 (Ala.Cr.App. 1994) (citations omitted.)
In Stewart v. State, 730 So.2d 1203, 1233 (Ala.Cr.App.1996), aff'd, 730 So.2d 1246 (Ala.1999), where the appellant raised the same issue, this Court noted that the record did contain some remarks that the verdict was a "recommendation," but stated, "this is a correct statement of Alabama *306 law. § 13A-5-47, Ala.Code 1975." This Court further stated that, because the trial court did not in any way minimize the jury's role or responsibility in sentencing, the use of the word "recommendation" did not violate Caldwell v. Mississippi, supra.
In the present case, a review of the trial court's entire instructions to the jury concerning its role and responsibilities demonstrates that the jury was made fully aware of the importance of its duties in arriving at an advisory verdict. "[T]here is `no reasonable possibility that the jury was misled, misinformed, or confused as to its critical role in sentencing under Alabama law.'" Price, supra, at 1027.

XX.
The appellant argues that the Alabama statute limiting court-appointed attorneys' fees to $1,000 for out-of-court work in each phase of a capital case violates state and federal constitutional law. Specifically, the appellant argues that § 15-12-21, Ala.Code 1975, is unconstitutional because by limiting compensation to $1,000 for out-of-court work, based on a $20 hourly rate, the statute assures that an appointed attorney in a capital case receives no compensation beyond 50 hours for out-of-court work. Therefore, he argues, the statute violates the separation-of-powers doctrine, constitutes a taking without just compensation, deprives indigent defendants of the effective assistance of counsel, and violates the Equal Protection Clause. The appellant raises this issue for the first time on appeal, so it must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P.
In Burgess v. State, [Ms. CR-94-0475, December 18, 1998] ___ So.2d ___ (Ala. Cr.App.1998), the defendant made the same arguments regarding § 15-12-21. In Burgess, supra, these claims were also reviewed pursuant to the plain-error rule, Rule 45A, Ala.R.App.P., and found to be without merit. The Court in Burgess noted that similar claims have been previously addressed and rejected by both this Court and the Alabama Supreme Court. Id., at ___, citing Ex parte Smith, 698 So.2d 219 (Ala.1997); Grayson, 479 So.2d 76 (Ala.), cert. denied, 474 U.S. 865, 106 S.Ct. 189, 88 L.Ed.2d 157 (1985); Hyde v. State, 778 So.2d 199 (Ala.Cr.App.1998); Stewart v. State, 730 So.2d 1203 (Ala.Cr.App.1997); Barbour v. State, 673 So.2d 461 (Ala.Cr. App.1994), aff'd, 673 So.2d 473 (Ala.1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996); May v. State, 672 So.2d 1307 (Ala.Cr.App.1993), writ quashed, 672 So.2d 1310 (Ala.1995); Johnson v. State, 620 So.2d 679 (Ala.Cr.App. 1992), reversed on other grounds, 620 So.2d 709 (Ala.), cert. denied, 510 U.S. 905, 114 S.Ct. 285, 126 L.Ed.2d 235 (1993); and Smith v. State, 581 So.2d 497 (Ala.Cr.App. 1990), reversed on other grounds, 581 So.2d 531 (Ala.1991), aff'd on return to remand, 698 So.2d 189 (Ala.Cr.App.1996), aff'd, 698 So.2d 219 (Ala.), cert. denied, 522 U.S. 957, 118 S.Ct. 385, 139 L.Ed.2d 300 (1997). Therefore, there is no plain error on this ground.
It should be noted that the Alabama Legislature recently passed the "Investment in Justice Act of 1999," and, in pertinent part, that Act amended § 15-12-21. Under the new Act, the rate of compensation for attorneys representing indigent criminal defendants is increased to $50 per hour for in-court time and $30 per hour for out-of-court time, with no limit on compensation for an attorney in a case involving a capital offense. Moreover, effective October 1, 2000, the hourly rate increases to $40 per hour for out-of-court time and $60 per hour for in-court time. As amended § 15-12-21(d) reads, in pertinent part:
"(d) Counsel appointed in cases described in subsections (a), (b), and (c), *307 including cases tried de novo in circuit court on appeal from a juvenile proceeding, shall be entitled to receive for their services a fee to be approved by the trial court. The amount of the fee shall be based on the number of hours spent by the attorney in working on the case and shall be computed at the rate of fifty dollars ($50) per hour for time expended in court and thirty dollars ($30) per hour for time reasonably expended out of court in preparation of the case. Effective October 1, 2000, the amount of the fee shall be based on the number of hours spent by the attorney in working on the case and shall be computed at the rate of sixty ($60) per hour for time expended in court and forty ($40) per hour for time reasonably expended out of court in preparation of the case. The total fees paid to any one attorney in any one case, from the time of appointment through the trial of the case, including motions for new trial, shall not, exceed the following:
"(1) In cases where the original charge is a capital offense or a charge which carries a possible sentence of life without parole, there shall be no limit on the total fee."

XXI.
The appellant argues that the trial court's sentencing order is constitutionally deficient. Specifically, he argues that the trial court failed to adequately consider the statutory and nonstatutory mitigating circumstances, failed to properly weigh the mitigating circumstances against the aggravating circumstances, and improperly concluded that the aggravating circumstances outweighed the mitigating circumstances. The appellant argues that the evidence indicated that he was intoxicated at the time of the offense and, therefore, that he was unable to conform his conduct to the requirements of law, a statutory mitigating circumstance tested in § 13A-5-51, Ala.Code 1975. He further argues that the trial court should have considered his intoxication as a nonstatutory mitigating circumstance. He argues that, because the trial court did not consider this circumstance when weighing the mitigating circumstances against the aggravating circumstances, the trial court's determination was improper. Thus, he argues his rights to due process and to a reliable sentence under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and Alabama law were violated.
Although there was evidence that the appellant was found in the intensive care unit of the Boaz-Albertville Hospital, and one of the officers testified that he had been told by Abraham Barnes, a friend of the appellant, that the appellant had attempted to commit suicide by taking some pills and drinking some alcohol, there was no further evidence concerning the appellant's being under the influence on the night of the offense. Thus, there was no evidence tending to show whether the appellant had consumed any alcohol or narcotics before the offense or following the offense. Marcus Carter, who was present with the appellant before and after the offense, testified that the appellant was not intoxicated when he was with him.
In Williams v. State, 710 So.2d 1276, 1344-47 (Ala.Cr.App.1996), aff'd, 710 So.2d 1350 (Ala.1997), the appellant argued that the trial court's sentencing order was constitutionally deficient and that the judge failed to give proper consideration to certain statutory and nonstatutory mitigating circumstances and thus, had failed to properly weigh the mitigating circumstances against the aggravating circumstances. Thus, he argued that the trial court had improperly concluded that the aggravating circumstances outweighed the mitigating *308 circumstances. Specifically, he had argued that the evidence proved that he was intoxicated at the time of the commission of the offenses, so the trial court erred in failing to find as a statutory mitigating circumstance that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. In his sentencing order in Williams, supra, at 1346, the trial court stated that he found that the State had disproved this mitigating circumstance. This Court stated as follows:
"Voluntary intoxication will not constitute the mitigating circumstance that the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law were substantially impaired, where the defendant did not show that he was so intoxicated so as to render himself incapable of appreciating the criminality of his conduct. Kuenzel v. State, 577 So.2d 474, 522 (Ala.Cr.App. 1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). While the evidence of intoxication in this case is in dispute, there was ample evidence from which the trial court could find that the appellant was not so intoxicated as to substantially impair his ability to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law."
Id., at 1346-47. This Court, in Williams, supra, at 1347, further concluded that the trial court had fully considered the mitigating circumstances offered and had properly weighed the aggravating circumstances against the mitigating circumstances; moreover, this Court concluded that the record supported the trial court's determination that the aggravating circumstances outweighed the mitigating circumstances.
In Freeman v. State, 776 So.2d 160 (Ala. Cr.App.1999), the appellant argued that the trial court had failed to find as a statutory mitigating circumstance that his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired. In support of this argument, the appellant cited an expert's opinion that it was possible that he may have experienced a brief reactive psychosis at the time of the murders. However, this Court noted that the record also contained abundant evidence tending to show that, at the time of the murders, the appellant did possess the ability to appreciate the criminality of his conduct and to conform his conduct to the requirements of law. Moreover, the record indicated that the trial court had considered all the evidence offered by the appellant concerning this statutory mitigating circumstance, but had determined that the circumstance did not exist. This Court stated, "`[t]he factual determination of the existence or non-existence of a mitigating circumstance is within the sound discretion of the trial judge where the evidence in that regard is in conflict.'" Id., quoting Wesley v. State, 575 So.2d 108, 121 (Ala.Cr.App.1989), reversed on other grounds, 575 So.2d 127 (1990).
In Loggins v. State, 771 So.2d 1070 (Ala. Cr.App.1999), the appellant argued that the trial court had improperly failed to find the statutory mitigating circumstances that the offense was committed while the appellant was under the influence of extreme mental or emotional disturbance, and that, at the time of the offense, his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was substantially impaired. In determining that the trial court had complied with the law in determining that death was the appropriate sentence, this Court stated that "it is clear *309 from a review of the entire record that the trial court understood its duty to consider all the evidence presented and that it did not abuse its discretion in finding statutory mitigating circumstances did not exist." Id.
In Maples v. State, supra, the appellant argued that the trial court had improperly rejected evidence of three statutory mitigating circumstances: specifically, that the appellant was under the influence of extreme mental or emotional disturbance when he committed the capital offense; that the appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to requirements of law was substantially impaired; and his age at the time of the offense. In finding that the trial court had not improperly rejected evidence of these mitigating circumstances, this Court stated:
"In reviewing this issue, we are guided by the following principles:
"`A sentencer in a capital case may not refuse to consider or be "precluded from considering" mitigating factors. Eddings v. Oklahoma, 455 U.S. 104, 110, 102 S.Ct. 869, 874, 71 L.Ed.2d 1 (1982) (quoting Lockett v. Ohio, 438 U.S. 586, 604, 98 S.Ct. 2954 2964-65, 57 L.Ed.2d 973 (1978)). The defendant in a capital case generally must be allowed to introduce any relevant mitigating evidence regarding the defendant's character or record and any of the circumstances of the offense, and consideration of that evidence is a constitutionally indispensable part of the process of inflicting the penalty of death. California v. Brown, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987); Ex parte Henderson, 616 So.2d 348 (Ala.1992); Haney v. State, 603 So.2d 368 (Ala.Cr. App.1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993). Although the trial court is required to consider all mitigating circumstances, the decision of whether a particular mitigating circumstance is proven and the weight to be given it rests with the sentencer. Carroll v. State, 599 So.2d 1253 (Ala.Cr.App.1992), aff'd, 627 So.2d 874 (Ala.1993), cert. denied, 510 U.S. 1171, 114 S.Ct. 1207, 127 L.Ed.2d 554 (1994). See also Ex parte Harrell, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). Moreover, the trial court is not required to specify in its sentencing order each item of proposed nonstatutory mitigating evidence offered that it considered and found not to be mitigating. Morrison v. State, 500 So.2d 36 (Ala. Cr.App.1985), aff'd, 500 So.2d 57 (Ala. 1986), cert. denied, 481 U.S. 1007, 107 S.Ct. 1634, 95 L.Ed.2d 207 (1987).'

"Williams v. State, 710 So.2d 1276, 1347 (Ala.Cr.App.1996), aff'd, 710 So.2d 1350 (Ala.1997), cert. denied, 524 U.S. 929, 118 S.Ct. 2325, 141 L.Ed.2d 699 (1998). See also Boyd v. State, 715 So.2d 825, 840 (Ala.Cr.App.1997), aff'd, 715 So.2d 852 (Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998). Further,
"`the decision as to whether a particular mitigating circumstance is sufficiently proven by the evidence and the weight to be accorded to it rests with the trial court. See Haney v. State, 603 So.2d 368 (Ala.Cr.App.1991), affirmed, 603 So.2d 412 (Ala.1992).
"`"`"Although consideration of all mitigating circumstances is required by the United Constitutions, Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978), the decision of whether a particular mitigating circumstance in sentencing *310 is proven and the weight to be given it rests with the judge and jury. Lucas v. State, 376 So.2d 1149 (Fla.1979)." Smith v. State, 407 So.2d 894, 901 (Fla.1981).'"
"`Harrell v. State, 470 So.2d 1303, 1308 (Ala.Cr.App.1984), affirmed, 470 So.2d 1309 (Ala.), cert. denied, 474 U.S. 935, 106 S.Ct. 269, 88 L.Ed.2d 276 (1985). See also McWilliams v. State, 640 So.2d 982 (Ala.Cr.App. 1991).'

"Giles v. State, 632 So.2d 568, 572 (Ala. Cr.App.1992), aff'd, 632 So.2d 577 (Ala. 1993), cert. denied, 512 U.S. 1213, 114 S.Ct. 2694, 129 L.Ed.2d 825 (1994)."
See also Boyd v. State, 715 So.2d 825, 839-40 (Ala.Cr.App.1997); Bush v. State, 695 So.2d 70, 88-90 (Ala.Cr.App.1995); Burgess v. State, [Ms. CR-94-0475, December 18, 1998] ___ So.2d ___ (Ala.Cr.App.1998).
In the present case, the trial court entered a sentencing order specifically setting out the statutory mitigating circumstances and stated that it had thoroughly and conscientiously considered all statutory and nonstatutory mitigating circumstances that reasonably pertained to the case, particularly the evidence presented by the appellant at trial, as well as the evidence of mitigating circumstances presented by the appellant at the sentencing phase. The trial court found that the appellant's agehe was 18 years old at the time of the offenseconstituted a mitigating circumstance, but that the statutory mitigating circumstance concerning the appellant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law at the time of the offense did not exist. The trial court further found, as nonstatutory mitigating circumstances, that the appellant had "a far less than perfect childhood following the divorce of his parents, a good reputation with at least some individuals and a substantially good work record for a person his age." The sentencing order further states that the trial court carefully weighed the one existing statutory aggravating circumstance, i.e., that the capital offense was committed while the appellant was engaged in the commission of or an attempt to commit or flight after committing or attempting to commit a robbery, against the statutory and nonstatutory mitigating circumstances. The trial court also carefully considered the jury's advisory recommendation of death, and found that the aggravating circumstance outweighed the mitigating circumstances. There is no indication in the record that the trial court abused its discretion in arriving at this determination and, because of the lack of evidence presented by the appellant concerning his possible intoxication, the trial court's finding that that mitigating circumstance did not exist was not improper.

XXII.
The appellant argues that the prosecution by improperly questioning prospective jurors about whether they would consider his age in imposing the death penalty, deprived him of a jury that was able to give full consideration to the mitigating circumstances. The appellant is referring to questions the prosecutor posed during voir dire examination as to whether the appellant's youth might hamper any potential jurors in making a decision in this case. The appellant argues that, by so questioning the jury, the prosecutor deprived him of a jury that would give weight to that particular mitigating circumstance at sentencing.
In Hart v. State, 612 So.2d 520, 526 (Ala.Cr.App.), aff'd, 612 So.2d 536 (Ala. 1992), the appellant argued that the prosecutor was impermissibly allowed to question potential jurors concerning whether *311 the appellant's age might impact their consideration of the death penalty in this case. The State in Hart asked the potential jury, during voir dire questioning, if the appellant's age (he was 16 years old) would cause them to automatically refuse to impose the death penalty. The prosecutor subsequently stated to the potential jurors that the jury would be required to consider the aggravating and the mitigating circumstances, and that the appellant's age at the time of the offense was a mitigating circumstance. This Court held:
"The question is strikingly similar to a question posed in Ford v. State, 515 So.2d 34 (Ala.Cr.App.1986), aff'd, 515 So.2d 48 (Ala.1987), cert. denied, 484 U.S. 1079, 108 S.Ct. 1061, 98 L.Ed.2d 1023 (1988), which this Court found to be permissible. In Ford, the prosecutor asked the venire:
"`Okay. We'll start with, again, this Defendant is nineteen years of age; with that, in your mind, if you believe beyond a reasonable doubt and to a moral certainty that this Defendant was, in fact, guilty of the offense of capital murder and that the case was so aggravated or aggravated type circumstances outweighed all of the mitigating circumstances, would you refuse to vote for the death penalty simply because the Defendant was nineteen years of age?'
"515 So.2d at 45.
"As in Ford, the question posed herein did not solicit a promise of a particular verdict. See also Ex parte Dobard, 435 So.2d 1351 (Ala.1983), cert. denied, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). Likewise, the prosecutor in asking the question did not strive to have the veniremembers disregard any recognized mitigating circumstance. The questioning in the instant case was permissible."
Hart v. State, supra, at 526.
Thus, this Court has previously held that such questioning is proper and that it does not persuade, or attempt to persuade, the potential jurors to disregard any mitigating circumstance.

XXIII.
The appellant argues that the prosecutor made improper arguments to the jury at both the guilt phase and the sentencing phase of his trial. The appellant raises six prosecutorial comments that he alleges constituted error and deprived him of a fair trial, due process, and a reliable sentence.

A.
The appellant argues that the prosecutor improperly diminished the jurors' responsibility in determining whether he should live or die. The appellant argues that the prosecutor repeatedly made argument diminishing the jurors' responsibility in determining his sentence and that, during the sentencing phase, he allegedly attempted to make the jurors believe that they were not personally responsible for the appellant's fate, by arguing:
"It's not personal because you didn't bring Casey McWhorter to this courtroom. And you didn't bring him into this courtroom to be tried on the offense of capital murder and you didn't create the situation that brought him to be tried on capital murder. And you didn't create the situation that caused this sentence hearing to be in existence at this present time."
He further stated:
"And I think those facts clearly and absolutely will say to you in this case that this defendant should receive the *312 death penalty from the State of Alabama. You didn't put him here and you remember that."
The appellant further cites statements by the prosecutor, such as "[Y]ou ladies and gentlemen are the conscience, you are the conscience of the community," and "I know using the term `simple' maybe is not a good word to use in this kind of situation because when you're dealing with a person's life nothing is simple. But in essence, it's that simple." None of these statements by the prosecutor were objected to at trial; therefore, they must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P.
A review of his entire argument indicates that the prosecutor was prompting the jury to follow the law rather than act on emotions. Despite the appellant's reference to Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), the prosecutor in no way suggested that the responsibility for determining the appropriateness of the appellant's sentence lay with someone other than the jury. "A prosecutor's argument `in telling the jury not to let sympathy, emotions, or compassion, affect its decision ... did not result in any error.' Stewart v. State, 601 So.2d 491, 506 (Ala.Cr.App.1992)." DeBruce v. State, 651 So.2d 599, 613 (Ala.Cr.App. 1993).
See also Freeman v. State, 776 So.2d 160, 189 (Ala.Cr.App.1999) ("the prosecutor was simply arguing to the jury that the mitigating circumstances argued by [defendant], even if proven, were outweighed by the aggravating circumstances. The prosecutor urged the jury to follow the law in making its sentencing recommendation.... [W]e find no error, much less plain error here.")
Moreover, the prosecutor's reference to the jury's role in weighing the aggravating and mitigating circumstances as "simple" was in no way misleading or prejudicial. The prosecutor's reference to the word "simple" concerned the jury's role in weighing the aggravating circumstances against the mitigating circumstances in arriving at a sentence. Thus, this particular argument by the prosecutor was that the legal process, not the particular decision in this case, was simple. In Burgess v. State, [Ms. CR-93-2054, November 20, 1998] ___ So.2d ___ (Ala.Cr.App.1998), the appellant argued that the prosecutor misled the jury during the sentencing phase concerning the meaning of mitigating circumstances and precluded the jury from considering certain mitigating evidence. This Court noted, however, that according to the record, the trial court had correctly instructed the jury on the mitigating circumstances and its responsibility to weigh those circumstances against the aggravating circumstances. "Nothing the prosecutor argued improperly urged the jury to disregard those instructions. Kuenzel v. State, 577 So.2d at 500." Id. at ___. Similarly, in the present case, the jury was properly instructed as to its role in weighing the mitigating circumstances and the aggravating circumstances. The prosecutor's comment in no way misled the jury concerning its duties or role in sentencing.

B.
The appellant argues that the prosecutors improperly expressed their personal opinions as to the sufficiency of the evidence and as to the appellant's guilt. The appellant argues that the prosecutors repeatedly expressed personal opinions during both the guilt phase and sentencing phase of the trial and that they exploited the influence of their office, rendering his trial fundamentally unfair. The appellant cites the prosecutor's argument during his opening statement at the guilt phase, wherein he stated:

*313 "The Court is going to charge you in this case that the State has the burden of proving the murder and also the robbery. The Court will give you the law that concerns all of that. And we believe that after you've heard the evidence in this case that you'll be satisfied beyond a reasonable doubt...."
(Emphasis by appellant in his brief to this Court.) Statements by the prosecutor cited to by the appellant, which were made during closing argument at the guilt phase are:
"And I submit to you that without question we have overwhelmingly proved his guilt to you beyond a reasonable doubt." "... I think when you consider all the evidence in this case that there's a lot more proof than just beyond a reasonable doubt...."
"... and when you sift through all of it and use your common sense that all of you have collectively, I know that you are going to be convinced that there was no other verdict in this case except guilty of the murder during the course of committing robbery."
(Emphasis by appellant in brief.) During the State's rebuttal argument, the appellant also cites to the following argument:
"And this theory that [defense counsel] has come up with, now it's a good one. I'll have to say that. I'll have to say it's a good one. While somewhere, somehow, sometime they must have killed Mr. Williams and carried him into the house and laid him on his back there in the bathroom floor. Or is that what he's saying. Do I understand what he is saying? Do you understand what he is saying? I really have problems knowing what he is saying."

(Emphasis by appellant in brief.) Thereafter, the prosecutor stated, "[W]e're confident that you'll return a verdict of guilty in this case of the offense of capital murder." During the closing argument at the penalty phase, the appellant cites to an argument by the prosecutor which he alleges impressed upon the jury the prosecutor's difficulty in seeking the death penalty:
"I've been a lawyer now over 24 years and I've been before juries on numbers of occasions and I guess when you come before a jury asking specifically that a jury award a death penalty in a capital case, it's probably the most difficult time that you have. It's not that we are hardhearted people, but we're asking I think in these circumstances that you the jury whatdo what I would say is right."
These comments by the prosecutor were proper comments on the character and strength of the State's evidence. In Hagood v. State, 777 So.2d 162 (Ala.Cr. App.1998), the appellant claimed that the prosecutor had improperly injected his personal beliefs into the trial during closing arguments at the guilt phase, by citing comments wherein the prosecutor "had prefaced his remarks with phrases such `I believe' or `I think.'" Id. at 205. This Court stated:
"`"While it is never proper for the prosecutor to express his personal opinion as to the guilt of the accused during closing argument, reversible error did not occur when the argument complained of constitutes mere expression of opinion concerning inferences, deductions and conclusions drawn from the evidence. Woods v. State, 19 Ala.App. 299, 97 So. 179 (1923); Mitchell v. State, 50 Ala.App. 121, 277 So.2d 395, cert. denied, 291 Ala. 794, 277 So.2d 404 (1973); Mainor v. State, 339 So.2d 147 (Ala.Crim. App.1976)."
"`Sams v. State, 506 So.2d 1027, 1029 (Ala.Cr.App.1986).'

*314 "Wilson v. State, 652 So.2d 778, 781 (Ala.Cr.App.1994).
"... The prosecutor was not expressing his personal opinion as to the appellant's guilt; he was merely giving his impression of the evidence. The fact that the prosecutor prefaced some of his comments with `I believe' or `I think' or some similar expression, does not render the comments improper.
"`In Ex parte Rieber, 663 So.2d 999 (Ala.1995), cert. denied, 516 U.S. 995, 116 S.Ct. 531, 133 L.Ed.2d 437 (1995), the Alabama Supreme Court stated:
"`"Furthermore, we view those comments that the prosecutor prefaced with `I think,' `I believe,' `I feel,' `I am satisfied,' and `I have no doubt,' as expressing his reasonable impressions from the evidence.... We note, however, that even if these comments were to be viewed as expressions of the prosecutor's personal opinions and, thus, as `crossing the line' as permissible argument, they nonetheless, would not constitute reversible error."
"`See also, Boyd v. State, 715 So.2d 825 (Ala.Cr.App.1997).'

"Roberts v. State, 735 So.2d 1244 (Ala. Cr.App.1997). See also Mason v. State, 768 So.2d 981 (Ala.Cr.App.1998)."
Hagood, 777 So.2d. at 205.
Moreover, the prosecutor's reference to the strength of the State's evidence was not improper. "[T]he prosecutor did not argue that the jury should convict the appellant, despite the evidence and law. Rather, his argument was that, consideration of the facts and evidence presented by the prosecution should persuade the jury that a prima facie case had been presented to support a conviction." Price v. State, 725 So.2d 1003, 1028 (Ala. Cr.App.1997), aff'd, 725 So.2d 1063 (Ala. 1998).
"`"`Certainly the State's attorney should be permitted to comment on the character of the evidence presented by the State and its strength. That certain evidence is uncontradicted tends to show its strength. Our statute does not abrogate the right of the State's counsel to comment on legitimate inferences in this regard.'"' Taylor v. State, 279 Ala. 390, 391 185 So.2d 414, 415 (1966), quoting Welch v. State, 263 Ala. 57, 81 So.2d 901 (1955). `A prosecutor has the latitude to comment on the fact that the State's evidence is uncontradicted or has not been denied.' Ex parte Williams, 461 So.2d 852, 853 (Ala.1984), citing Beecher v. State, 294 Ala. 674, 320 So.2d 727, 734 (1975).
"In Hunt v. State, 659 So.2d 933 (Ala. Cr.App.1994), aff'd, 659 So.2d 960 (Ala. 1995), cert. denied, 516 U.S. 880, 116 S.Ct. 215, 133 L.Ed.2d 146 (1995), Hunt objects to a number of arguments made to the jury by the prosecutor, including one wherein the prosecutor stated that the State did not intend to ask the jury to convict the appellant on `flimsy evidence,' because the evidence presented was `overwhelming,' and that `at the conclusion of this trial that you will agree with the State of Alabama that the defendant is guilty of capital murder.' Id. at 940-41. Hunt also complained that the prosecutor argued to the jury that the evidence as to the defendant's guilt was overwhelming and that Hunt's guilt had been proven beyond a reasonable doubt, and stated that `if this isn't capital murder, then there has never been capital murder in Walker County.' This Court found no error in the prosecutor's arguments to the jury stating:
"`"`[T]he rule on which the weight of authority is in agreement is that it is improper for the prosecuting *315 attorney so as to express his personal opinion or belief in guilt of accused as to permit an inference by the jury that such opinion or belief is based on reasons or information outside the evidence, but that it is not improper for him to argue or to express his opinion that accused is guilty, where he states, or it is apparent, that such opinion, is based solely on the evidence.' 23A C.J.S. Criminal Law § 1104, p. 194-95 (1961). See Crenshaw v. State, 153 Ala. 5, 7, 45 So. 631, 632 (1908) (prosecutor argued to the effect that the evidence showed a clear case); Cranmore v. State, 41 Ala.App. 276, 279, 129 So.2d 121, 123 (1961) (prosecutor's statement, `I never did ask you to convict a man I believe to be innocent' found to be a `mere expression of opinion by the solicitor that the defendant was guilty, and ... not a cause for reversal'); Handley v. State, 214 Ala. 172, 175, 106 So. 692, 695 (1925) (argument, `She is a murderer; she is a murderer. She is not someone who has committed some of the lower offenses of homicide' did `not transcend the bounds of legitimate argument'); Gardner v. State, 17 Ala.App. 589, 590-91, 87 So. 885, 886. cert. denied, 205 Ala. 60, 87 So. 888 (1920) (prosecutor's argument that the defendant `is a pickpocket' in prosecution for grand larceny `was the expression of an opinion' by the prosecutor, `and from the state's contention was supported by one phase of the evidence.' Presiding Judge Bricken dissented, arguing that `it did not lie in the mouth of the solicitor to decide these vital questions'); McColston v. State, 20 Ala.App. 591, 593, 104 So. 347, 348-49 (1925) (prosecutor's argument, `He is guilty of the crime of highway robbery,' should be refrained from but did not constitute error); Dunn v. State, 19 Ala.App. 576, 577, 99 So. 154, 155 (1924) (prosecutor's comment, `I tell you that this defendant is guilty,' was merely an argument of the inference drawn by the solicitor and was not improper); Griggs v. State, 21 Ala.App. 530, 531, 109 So. 611 (1926) (prosecutor stated that from the evidence he believed the defendant was guilty, and that, if he did not believe the defendant was guilty, he would not ask the jury to convict him. Held: The opinion was based upon the evidence. `Where this is the case, such expression of opinion will not be sufficient upon which to predicate a reversal'); Tucker v. State, 28 Ala.App. 492, 494, 188 So. 276, 277 (1939) (prosecutor's statement, `I believe he [defendant] is guilty' was a mere expression of opinion by the solicitor' and not improper remark); Gilbert v. State, 19 Ala.App. 104, 106-07, 95 So. 502, 504 (1923) (prosecutor's closing argument, `He is guilty as hell itself under this testimony and you know it' though not approved was `but the mere expression of counsel made in argument')."
"`Galloway v. State, 484 So.2d 1199, 1201 (Ala.Cr.App.1986).'

"Hunt v. State, supra, at 941-42."
Price, 725 So.2d at 1028-29. See also Hagood v. State, 777 So.2d at 205 (the prosecutor's comment to the jury, "just like the defense believes strongly in their case, I believe strongly in this one," was not an improper expression of his personal opinion concerning the case).
Furthermore, the comment by the prosecutor that the appellant cites indicating *316 that the defense's theory of the case was "a good one" and that the prosecutor failed to understand what defense counsel was submitting as his theory of the defense, was not improper. In Gaddy v. State, 698 So.2d 1100, 1122-25 (Ala.Cr.App.1995), aff'd, 698 So.2d 1150 (Ala.1997), the prosecutor attempted to discredit the appellant's self-defense theory, arguing that he had given his version of the facts for the first time at trial and making such comments as "[a]re eleven wounds to the throat self-defense? Five other wounds to his chest. Look at the photographs, one of them is in his side, upper part of the chest on the side. Are they self-defense?" He also stated "if it was self-defense, why not get him into unconsciousness and go out the door and call the police and say, `I've just been attacked. This man came at me with a knife.'" Id. at 1124. This Court found no error by the prosecutor in making these remarks to the jury and stated:
"When these comments are examined in light of the entire record, it is clear that the prosecutor's purpose in making the statements was to comment on the evidence in this case and to draw legitimate inferences therefrom; specifically, to point out the weaknesses in the appellant's theory of the case, as established by the appellant's testimony."
Id. at 1123.
There was no impropriety in these remarks to the jury; they did not constitute expressions of the prosecutor's personal belief as to the appellant's guilt.

C.
The appellant argues that the State misled the jury by arguing facts not in issue. The appellant argues that, throughout the State's argument, the prosecutor argued facts not in evidence and thereby violated his rights to due process and to a reliable sentence. The appellant cites one such instance that occurred during the prosecutor's closing argument:
"But you can tell from the autopsy from the autopsy evidence that you heard, you can tell from the firearms examination evidence that you've heard that a number of those rounds were fired from this old gun right here, the Remington (indicating) which ... McWhorter admits in his statement
"[Defense counsel]: Your Honor, again I'm going to object to this as incorrect statement.
"THE COURT: The jury will recall the evidence. Overruled."
A review of the record indicates that the prosecutor was attempting to draw the jury's attention to certain inconsistencies in the evidence concerning the two weapons that were used during the course of the murder, a Marlin .22 rifle and a Remington.22 rifle. In his statement, the appellant indicated that he had an old rifle that was not "clip-fed," and that Daniel Minor had the other "clip-fed" rifle. In that statement, the appellant alleged that he shot the victim only once and that he shot him in the leg. However, there was another pretrial statement made by the appellant to Marcus Carter in which he indicated that Daniel Minor had "frozen" when the victim entered his home and was unable to shoot him; therefore, the appellant grabbed the rifle that had not jammed and shot the victim until he was dead. The prosecutor further pointed out that the forensics evidence indicated that a number of the rounds came from the older gun, which McWhorter had admitted in his statement was in his possession. Thus, this argument by the prosecution was a reasonable inference from the evidence.
"`During closing argument, the prosecutor, as well as defense counsel, has a right to present his impressions from *317 the evidence, if reasonable, and may argue every legitimate inference.' Rutledge v. State, 523 So.2d 1087, 1100 (Ala.Cr.App. 1987) (citation omitted), rev'd on other grounds, 523 So.2d 1118 (Ala.1988). Further, as we have previously stated, the prosecutor may argue to impeach the defense's evidence. Stewart v. State, 601 So.2d at 506." Maples v. State, 758 So.2d 1, 53 (Ala.Cr.App.1999).
"`"The prosecutor's comment was a reasonable inference from the evidence. `The test of a legitimate argument is that whatever is based on facts in evidence is within the scope of proper comment and argument to the jury.' Ward v. State, 440 So.2d 1227, 1230 (Ala.Cr.App.1983). `Counsel for both the State and [the] defendant are allowed wide latitude in drawing reasonable inferences from the evidence in their closing arguments. A prosecutor as well as defense counsel has a right to present [her] impression from the evidence, if reasonable, and may argue every legitimate inference.' Manigan v. State, 402 So.2d 1063, 1072 (Ala.Cr.App.), citations omitted, cert. denied, 402 So.2d 1072 (Ala. 1981). `A prosecutor may express her opinion concerning reasonable inferences, deductions, and conclusions to be drawn from the facts and evidence, as long as she does not express an opinion as to the defendant's guilt. Sams v. State, 506 So.2d 1027, 1029 (Ala.Cr.App.1986).' Cross v. State, 536 So.2d 155, 160 (Ala.Cr.App. 1988)."'

"Wilkerson v. State, 686 So.2d 1266 (Ala. Cr.App.1996), quoting Wright v. State, 641 So.2d 1274, 1282 (Ala.Cr.App.1993)."
Price v. State, supra, at 1031-32.
These comments by the prosecutor were reasonable inferences drawn from the evidence presented; furthermore, the trial court properly instructed the jury that the prosecutor's comments were not evidence and that the jury was to recall the evidence for themselves.

D.
The appellant argues that the prosecutor impermissibly commented on the appellant's exercise of his right to remain silent. The appellant refers to the fact that, in his closing argument at the guilt phase, the prosecutor referred to the appellant's statement as his "testimony" on at least two occasions. The appellant alleges that this reference improperly focused the jury's attention on the fact that the appellant chose not to testify.
However, a review of the record indicates that these isolated references occurred within an extensive argument by the prosecutor concerning the credibility of, and inconsistencies in, the appellant's statements to the authorities and to his friend. The prosecutor's use of the term "testimony" each time referred to the information given by the appellant in the statements.
"A reviewing court must evaluate allegedly improper comments made by the prosecutor in the context of the entire proceeding in which the comments were made. Duren v. State, 590 So.2d 360 (Ala.Cr.App.1990), aff'd, 590 So.2d 369 (Ala.1991), cert. denied, 503 U.S. 974, 112 S.Ct. 1594, 118 L.Ed.2d 310 (1992). `"In judging a prosecutor's closing argument, the standard is whether the argument so infected the trial with unfairness as to make the resulting conviction a denial of due process."' Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)).

*318 "`In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses, the task of this Court is to consider their impact in the context of the particular trial, and not to view the allegedly improper acts in the abstract. Whitlow v. State, 509 So.2d 252, 256 (Ala.Cr.App.1987); Wysinger v. State, 448 So.2d 435, 438 (Ala.Cr.App.1983); Carpenter v. State, 404 So.2d 89, 97 (Ala.Cr.App.1980), cert. denied, 404 So.2d 100 (Ala.1981). Moreover, this Court has also held that statements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. Orr v. State, 462 So.2d 1013, 1016 (Ala.Cr.App. 1984); Sanders v. State, 426 So.2d 497, 509 (Ala.Cr.App.1982).'

"Bankhead v. State, 585 So.2d 97, 106 (Ala.Cr.App.1989), aff'd in relevant part, remanded on other grounds, 585 So.2d 112, 127 (Ala.1991), aff'd on return to remand, 625 So.2d 1141 (Ala.Cr.App. 1992)."
Lockhart v. State, 715 So.2d 895, 902-03 (Ala.Cr.App.1997).
Moreover, in evaluating whether a prosecutor's comment constitutes a remark on the appellant's failure to testify, this Court has set forth the following guidelines.
"In Windsor v. State, 683 So.2d 1021, 1023-24 (Ala.1994), the Alabama Supreme Court addressed the standard for reviewing whether a comment is a comment on an accused's failure to testify, as follows:
"`As this Court recently held in Ex parte Musgrove, 638 So.2d 1360 (Ala. 1993), "When an accused contends that a prosecutor has made improper comments during a closing argument, the statements at issue must be viewed in the context of the evidence presented in the case and the entire closing argument(s) made to the jury...." 638 So.2d at 1368....
"`. . . .
"`Alabama, by statute, specifically protects the privilege against self-incrimination from comment by the prosecution. § 12-21-200, Ala.Code 1975. A prosecutor must be extremely careful not to overstep the mark or to break with the established protocol regarding statements about that privilege. Musgrove, supra. To improperly comment on that privilege would be a clear violation of the defendant's rights under Article I, § 6, Ala. Const. 1901, as well as the rights protected by the Fifth Amendment as that Amendment is incorporated into the Fourteenth Amendment to the United States Constitution.
"`In Ex parte Wilson, 571 So.2d 1251, 1261 (Ala.1990), this Court cited the standard endorsed by the United States Court of Appeals for the Eleventh Circuit:
"`"`[A] statement by a prosecutor is improper if it was manifestly intended to be, or was of such a character that the jury would naturally and necessarily take it to be, a comment on the failure of the accused to testify.' Marsden v. Moore, 847 F.2d 1536, 1547 (11th Cir.), cert. denied, 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988); United States v. Betancourt, 734 F.2d 750, 758 (11th Cir.), cert. denied, 469 U.S. 1021, 105 S.Ct. 440, 83 L.Ed.2d 365 (1984)."'
Payne v. State, 683 So.2d 440, 448 (Ala.Cr. App.1995), aff'd, 683 So.2d 458 (Ala.1996).
In the present case, a review of the prosecutor's entire argument clearly demonstrates *319 that the jury would not have reasonably gleaned from his comments any reference to the appellant's failure to testify. The appellant's "testimony" clearly referred to his statements made prior to trial. "`[A] court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.' Donnelly v. DeChristoforo, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974)." Carroll v. State, 599 So.2d 1253, 1268 (Ala.Cr.App.1992). In Hardy v. State, [Ms. CR-95-0589, March 26, 1999] ___ So.2d ___, ___ (Ala.Cr.App. 1999), where the prosecutor inadvertently misstated the law in his opening argument during the penalty phase, this Court stated:
"It is clear from a reading the prosecutor's argument that, while the highlighted comment was a misstatement, it was inadvertent and was not intended to mislead the jury. It is further clear from a reading of all counsels' arguments, and the trial court's instructions that the mistake was corrected and the jury was correctly informed....' The allegedly inappropriate comment cannot be viewed in isolation, but rather should be in the context in which it occurred.' Mason v. State, 768 So.2d 981 (Ala.Crim. App.1998)."
In the present case, it should be noted that the appellant failed to object to this incorrect reference by the prosecutor; therefore, this matter must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P. A review of the entire argument indicates that this error was not so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983).

E.
The appellant argues that the prosecutor made improper victim-impact arguments. The appellant cites the following remarks by the prosecutor during his arguments at the penalty phase, which the appellant alleges were intended solely to inflame the jury.
"Do you think it would have been a pretty picture [to know] how Mr. Williams looked when he got shot the first time and then the second and then the third and then the fourth? How he looked when he hit the ground, hit the floor in his house when he was shot and he was shot and he was shot. And then finally shot twice more in his head."
The appellant also cites the following statement made during the guilt phase of his trial:
"What you're doing is very important. It is important to us who call ourselves the State. It is important to the family that's seated over here of Mr. Ed Williams.

"Now you look at that and you line these holes and you think of what that man was going through as he was being shot time after time after time."
(Emphasis by appellant in his brief to this Court.)
"`"The basic issue [in assessing the impact of argument designed to inflame the passions of the jury] should be whether the prosecutor's conduct was designed to induce a decision not based on a rational assessment of the evidence. If so, the conduct should be held improper."` McNair v. State, 653 So.2d at 334-35 (quoting Doverby, Improper Prosecutorial Argument in Capital Cases, 58 UMKC L.REV. 651, 670 (1990))."
*320 Thomas v. State, 766 So.2d 860, 946 (Ala. Cr.App.1998).
"The mere collateral consequence that, by human nature, the jury was inflamed by the comment is not fatal to the prosecutor's argument: prejudice is inherent in the inflammatory nature of the facts properly before the jury. These comments could not have been reasonably construed to lead the jury to convict [the appellant] without sufficient evidence."
Guthrie v. State, 689 So.2d 935, 945-46 (Ala.Cr.App.1996), aff'd, 689 So.2d 951 (Ala.1997). It is clear that a prosecutor may comment on the evidence or draw proper inferences therefrom based upon his own reasoning.
"`Liberal rules are allowed counsel in drawing inferences from the evidence in their argument to the jury, whether they are truly drawn or not. Control of closing argument rests in the broad discretion of the trial court and, where no abuse of discretion is found, there is not error. The trial judge can best determine when discussion by counsel is legitimate and when it degenerates into abuse.' (citations omitted.)"
Harris v. State, 539 So.2d 1117, 1123 (Ala. Cr.App.1988), quoting Sasser v. State, 494 So.2d 857, 859-60 (Ala.Cr.App.1986).
There was no improper victim-impact argument made by the prosecutor during the guilt phase or the penalty phase of this trial.
"[A] review of the entire argument indicates that this comment was based on the facts in evidence as to what occurred on the night of the offense, and referred only to the loss of the victim and the importance of this case to his family. In Slaton v. State, supra, the defendant challenged similar comments by the district attorney made at the opening and closing of the guilt phase, arguing that Booth v. Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987), and South Carolina v. Gathers, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989), still applied to such comments made during the guilt phase, because they were irrelevant and highly prejudicial. However, this Court found no error in those comments, stating that they `merely thanked the jury for its service on behalf of the family, and pointed out the importance of this case to the family. This Court has held that there is nothing wrong with introducing family members to the jury, nor is it reversible error when the prosecutor briefly suggests that he is speaking on behalf of the victim's family.' Slaton v. State, 680 So.2d 879, 906 (Ala.Cr.App.1995), citing Henderson v. State, 583 So.2d 276, 286 (Ala.Cr.App.1990), affirmed, 583 So.2d 305 (Ala.1991), cert. denied, 503 U.S. 908, 112 S.Ct. 1268 117 L.Ed.2d 496 (1992).
"Moreover, these comments ... did not result in error as to sentencing. In Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), the United States Supreme Court determined that victim impact evidence was admissible for consideration by the jury during the sentencing phase of a capital case. `[A] prosecutor may present and argue evidence relating to the victim and the impact of the victim's death on the victim's family in the penalty phase of a capital trial.' McNair v. State, 653 So.2d 320, 331 (Ala.Cr.App.1992)."
Price v. State, supra, at 1033-34.
Because the prosecutor was properly commenting on the evidence as presented, including the number of shots suffered by the victim, there was no error.

F.
The appellant argues that the prosecutor improperly implied that the *321 jury had a duty to convict the appellant. The appellant refers to a statement made by the prosecutor during his closing argument at the guilt phase where he stated, "We're asking you just to be responsible to the duty that you have sworn to be responsible to." A review of the entire argument reveals that the prosecutor was arguing the strength of the State's case and the nature of the evidence presented. He then stated: "And, ladies and gentlemen, that's what we're asking you to do. We're asking you just to be responsible to the duty that you swore to be responsible to. Take these facts and make a true finding of these facts." The appellant did not object to this argument; therefore, this issue must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P.
In Price v. State, supra at 1027-29, the appellant argued that the prosecutor, through his argument, pressured the jury into convicting him because of the prosecutor's exhortation concerning the great deal of work undertaken by the prosecution in presenting the case and his statement that "it was the jury's duty to convict the appellant and justice could be done only by returning a conviction." Id. at 1027-28. This Court, however, noted that the prosecutor clearly argued to the jury that the work that had been undertaken in presenting the case would be "`without any result unless the jury will seriously consider the facts and this evidence.'" Therefore, this Court noted that "the prosecutor did not argue that the jury should convict the appellant, despite the evidence and law. Rather, his argument was that, consideration of the facts and the evidence presented by the prosecution should persuade the jury that a prima facie case had been presented to support a conviction."
In Smith v. State, 727 So.2d 147, 171 (Ala.Cr.App.1998), aff'd, 727 So.2d 173 (Ala.1999), the appellant argued that the prosecutor's argument at the sentencing phase implied to the jury that it had a duty to sentence the appellant to death. This Court, after reviewing the prosecutor's entire argument, held that "[t]he prosecutor simply requested that the jury recommend a death sentence based upon the law. Of course, a prosecutor seeking a death penalty will argue that the aggravating factors outweigh the mitigating factors and that the defendant should receive the death penalty. There is no plain error here."
In the present case, the prosecutor was arguing that the jury should convict the appellant based on the law and the evidence and, as was the case in Smith v. State, supra, it is clear that a prosecutor will argue that the State has presented ample evidence to satisfy its burden of proof. There is no plain error here.

XXIV.
The appellant argues that the trial court improperly denied his motion for a fully sequestered voir dire. The appellant argues that, by denying his motion for individually sequestered voir dire, the trial court denied him his rights guaranteed by the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, by the Alabama Constitution, and by Alabama law. The record indicates that a hearing was held on this motion, at which defense counsel acknowledged that the appellant could conduct individual voir dire but further requested the sequestration of the entire venire during the voir dire period. The trial court responded to this request by telling defense counsel that the venire panel would be charged to refrain from discussing anything concerning the case or any other case. He further stated that a group of approximately 25 veniremembers would be taken to Guntersville, where there was a larger courthouse. There, they would be asked general qualifying questions concerning the case as a *322 group. They would then be divided into panels of approximately 11 to 14 and would be questioned again by each counsel. Thereafter, the trial court indicted that, to the extent needed, the veniremembers could be questioned or spoken to individually outside the presence of the other jurors.
In Maples v. State, 758 So.2d 1 (Ala.Cr.App.1999), the appellant argued that the trial court had improperly denied his motion to fully sequester individual voir dire examination of jurors. This Court indicated that it had reviewed the record of the voir dire proceedings and that the method used to examine and to impanel the jury "`provided reasonable assurance that prejudice would have been discovered if present.'" Id. at 52, quoting Haney v. State, 603 So.2d 368 (Ala.Cr.App. 1991), aff'd, 603 So.2d 412 (Ala.1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993).
"`A trial court is vested with great discretion in determining how voir dire examinations will be conducted, and that court's decision on how extensive a voir dire examination is required will not be overturned except for an abuse of that discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (1973); Lane v. State, 644 So.2d 1318 (Ala.Cr.App.1994); Harris v. State, 632 So.2d 503 (Ala.Cr.App. 1992), affirmed, 632 So.2d 543 (Ala.1993), affirmed, [513] U.S. [504], 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995). After reviewing the record, we conclude that the trial court did not abuse its discretion in this regard.'

"Ex parte Land, 678 So.2d at 242. Furthermore, we addressed a similar claim in Haney v. State, 603 So.2d 368 (Ala.Cr. App.1991), aff'd, 603 So.2d 412 (Ala. 1992), cert. denied, 507 U.S. 925, 113 S.Ct. 1297, 122 L.Ed.2d 687 (1993):
"`Appellant contends that the trial court erred in failing to grant individually sequestered voir dire of the jury venire. The trial court did permit individual voir dire in several instances but otherwise the jurors were questioned by panels. As a general rule, the decision whether to voir dire prospective jurors individually or collectively is within the sound discretion of the trial court. Waldrop v. State, 462 So.2d 1021 (Ala.Cr.App.1984), cert. denied, 472 U.S. 1019, 105 S.Ct. 3483, 87 L.Ed.2d 618 (1985). This discretion is limited, however, by the requirements of due process. United States v. Hawkins, 658 F.2d 279 (5th Cir.1981); Waldrop v. State. Individual questioning may be necessary under some circumstances to ensure that all prejudice has been exposed. United States v. Hurley, 746 F.2d 725 (11th Cir. 1984). We have reviewed the record of the voir dire examinations and the entire jury selection procedure in this case and find that the method of empaneling the jury provided reasonable assurance that prejudice would have been discovered if present. We find no abuse of discretion in the trial court's handling of the empaneling of this jury.'
"603 So.2d at 402. `Even in capital cases, there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination.' Hallford v. State, 548 So.2d 526, 538 (Ala.Cr.App. 1988), aff'd, 548 So.2d 547 (Ala.), cert. denied, 493 U.S. 945, 110 S.Ct. 354, 107 L.Ed.2d 342 (1989). See also Taylor v. State, 666 So.2d 36 (Ala.Cr.App.), opinion extended after remand, 666 So.2d 71 (Ala.Cr.App.1994), aff'd, 666 So.2d 73 (Ala.1995), cert. denied, 516 U.S. 1120, 116 S.Ct. 928, 133 L.Ed.2d 856 (1996)."
Id. at 52.
There is no indication that the appellant was prejudiced in any way by the trial *323 court's method of conducting the voir dire examination of these prospective jurors. A review of the record indicates that the voir dire examination was extensive and that the parties were allowed to conduct individual questioning as needed. It is clear that the trial court attempted to create an atmosphere in which these potential jurors could feel more open and honest in answering questions, without fearing that all of their responses were being scrutinized by the other veniremembers. Thus, the trial court did not err in denying the appellant's motion for individually sequestered voir dire examination.

XXV.
The appellant argues that counting robbery as an element of the capital offense as well as an aggravating circumstance was improper. However, this argument has been held to be without merit. Hallford v. State, 548 So.2d 526, 538 (Ala. Cr.App.1988), aff'd, 548 So.2d 547 (Ala. 1989).
"Appellant's contention is contrary to the 1981 capital murder statute, under which he was convicted. Section 13A-5-50 provides as follows:
"`The fact that a particular capital offense as defined in § 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.
"`By way of illustration and not limitation, the aggravating circumstance specified in § 13A-5-49(4) shall be found and considered in determining sentence in every case in which a defendant is convicted of the capital offenses defined in subdivisions (1) through (4) of subsection (a) of section 13A-5-40.'
"This case falls directly within § 13A-5-50, because the appellant was convicted of robbery murder under § 13A-5-40(a)(2) and the aggravating circumstance was that under § 13A-5-49(4)."
Hallford v. State, supra, at 538.
Thus, the appellant's argument is without merit.

XXVI.
The appellant argues that the photographs admitted into evidence by the trial court served only to inflame and prejudice the jury in this case. The appellant argues that the State's introduction of 55 photographs of the crime scene, a videotape of the crime scene, and two sketches of the crime scene was overly prejudicial, in that included were gruesome pictures of the victim's body, and because they were excessively cumulative.
"`Generally, photographs are admissible into evidence in a criminal prosecution "if they tend to prove or disprove some disputed or material issue, to illustrate or elucidate some other relevant fact or evidence, or to corroborate or disprove some other evidence offered or to be offered, and their admission is within the sound discretion of the trial judge." Magwood v. State, 494 So.2d 124, 141 (Ala. Cr.App.1985), aff'd, 494 So.2d 154 (Ala.1986), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). See also Woods v. State, 460 So.2d 291 (Ala.Cr.App.1984); Washington v. State, 415 So.2d 1175 (Ala.Cr.App. 1982); C. Gamble, McElroy's Alabama Evidence § 207.01(2) (3d ed.1977).
"`... The fact that a photograph is gruesome and ghastly is no reason to exclude it from the evidence, so long *324 as the photograph has some relevancy to the proceedings, even if the photograph may tend to inflame the jury.'

"Bankhead v. State, 585 So.2d 97, 109 (Ala.Cr.App.1989), remanded on other grounds, 585 So.2d 112 (Ala.), on remand, 585 So.2d 133 (Ala.Cr.App.1991); Ex parte Siebert, 555 So.2d 780 (Ala. 1989), cert. denied, 497 U.S. 1032, 110 S.Ct. 3297, 111 L.Ed.2d 806 (1990). Lawhorn v. State, 581 So.2d 1159 (Ala. Cr.App.1990), aff'd, 581 So.2d 1179 (Ala. 1991), cert. denied, 502 U.S. 970, 112 S.Ct. 445, 116 L.Ed.2d 463 (1991).
"The state had the burden of proving that the victim was dead, and this photograph wa[s] direct evidence on that point. Perpetrators of crimes that result in gruesome scenes have reason to expect that photographs of those gruesome scenes will be taken and admitted into evidence."
Jenkins v. State, 627 So.2d 1034, 1045 (Ala.Cr.App.1992), aff'd, 627 So.2d 1054 (Ala.1993).
"`[P]hotographs depicting the character and location of wounds on a deceased's body are admissible even though they are cumulative and based on undisputed matters.'" Ex parte Bankhead, 585 So.2d 112, 118-19 (Ala.1991), citing Magwood v. State, 494 So.2d 124, 141 (Ala.Cr. App.1985), aff'd, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). In the present case, the photographs were admissible because they were relevant and material in that they helped to illustrate testimony given by the police officers concerning the circumstances and conditions of the crime scene, as well as to illustrate testimony given by the coroner concerning the type, location, and extent of the victim's wounds that caused his death. "`Photographs are admissible into evidence within the discretion of the trial judge and will be reviewed on appeal only to determine if there has been an abuse of that discretion. Fletcher v. State, 291 Ala. 67, 277 So.2d 882 (Ala. 1973).'" Aultman v. State, 621 So.2d 353, 363 (Ala.Cr.App.1992), quoting Ex parte Bankhead, supra, at 118-19. In the present case there was no such abuse of discretion. "While there were numerous exhibits depicting the crime scene and while the victim's body was shown in these exhibits, and while several of the exhibits depicting the victim's body were gruesome, we hold that there was nothing improper about their admission into evidence." Aultman v. State, supra, at 362.

XXVII.
The appellant argues that the capital sentencing statute in Alabama is unconstitutional because it does not specify the weight the judge should give the jury recommendation in his consideration of a sentence.
However, this issue has been addressed and rejected by the appellate courts of Alabama, based on the United States Supreme Court's decision in Harris v. Alabama, 513 U.S. 504, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995).
"The Court in Harris held that `the Eighth Amendment does not require the State to define the weight the sentencing judge must give to an advisory jury verdict.' 513 U.S. at 512, 115 S.Ct. at 1036. The Court further held:
"`The Constitution permits the trial judge, acting alone, to impose a capital sentence. It is thus not offended when a State further requires the sentencing judge to consider a jury's recommendation and trusts the judge to give it the proper weight.'
"513 U.S. at 515, 115 S.Ct. at 1037; see also Boyd v. State, 715 So.2d 825, 846 (Ala.Cr.App.1997), aff'd, 715 So.2d 852 *325 (Ala.), cert. denied, 525 U.S. 968, 119 S.Ct. 416, 142 L.Ed.2d 338 (1998).
"Alabama's capital sentencing statute adequately channels the trial court's discretion so as to prevent arbitrary results.' Bush v. State, 695 So.2d 70, 94 (Ala.Cr.App.1995), aff'd, 695 So.2d 138 (Ala.), cert. denied, 522 U.S. 969, 118 S.Ct. 418, 139 L.Ed.2d 320 (1997), citing Harris and rejecting claims that Alabama's statute permits a standardless override."
Melson v. State, 775 So.2d 857, 899 (Ala. Cr.App.1999). "The Court in Harris held that the `"Eighth Amendment is not violated every time a State reaches a conclusion different from a majority of its sisters over how best to administer its criminal laws."' Harris, 513 U.S. at 510, 115 S.Ct. at 1034, 130 L.Ed.2d at 1012-13, quoting Spaziano v. Florida, 468 U.S. 447, 464, 104 S.Ct. 3154, 3164, 82 L.Ed.2d 340 (1984)." Roberts v. State, 735 So.2d 1244, 1268 (Ala. Cr.App.1998), aff'd, 735 So.2d 1270 (Ala. 1999). Thus, because this claim has previously been addressed and rejected, it is without merit.

XXVIII.
The appellant argues that the trial court improperly relied on a presentence report that contained inadmissible hearsay. Specifically, the appellant argues that the unreliable and inadmissible hearsay concerned his past conduct and included two unsubstantiated driving violations, an allegation that he had been picked up as a runaway when he was juvenile, and statements from "people" who discussed his behavior at school and in the community. The appellant argues that the consideration of this inadmissible hearsay violated his rights pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, the Alabama Constitution, and Alabama state law. The appellant failed to object on this ground below; therefore, this issue must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P.
A review of the presentence report reveals that, under the appellant's record of prior arrests, are listed two speeding tickets in May 1991 and May 1992, respectively, wherein the appellant paid the fines, as well as a statement that his only juvenile record "consists of being picked up as a runaway when he was 15 years old." His personal and social history indicates that his parents divorced when he was two years old and that his father had been an alcoholic. He was raised by his mother, who remarried while the appellant was young, and the appellant related "fairly well" to his stepfather. The history then states that "[h]owever, [the appellant] did run away from home at the age of fifteen and later moved in with his aunt, ... with whom he lived for approximately a year." Under the section for his reputation and community activities the following is stated:
"People that I talked to were surprised that Casey would be involved in this kind of situation. He was thought to be hardworking, helpful, bright, and quiet. Those that I spoke with felt that the people that he was running around with were his main source of problem. On occasion he would exhibit a rebellious attitude which put him in conflict with his teachers and principal especially at Boaz High School. That rebellious attitude has also brought him into conflict with personnel at the Marshall County Jail who told me that Mr. McWhorter needed to `grow up' and `to learn to keep his mouth shut'."
A review of the trial court's sentencing order reveals that the trial court found the existence of the statutory mitigating circumstance that the appellant did not have *326 significant history of prior criminal activity. Section 13A-5-51(1), Ala.Code 1975. Therefore, the reference to the speeding tickets and the appellant having been picked up as a runaway was not prejudicial and, thus, did not constitute plain error. Moreover, as a nonstatutory mitigating circumstance, the trial court found that the appellant had "a far less than perfect childhood following the divorce of his parents, a good reputation with at least some individuals, and a substantially good work record for a person of his age all of which has been considered by the court as nonstatutory mitigating circumstances." Therefore, the appellant also suffered no prejudice pursuant to the information concerning his reputation and community activities; therefore, it did not constitute plain error.
Moreover, this Court has previously held the appellant's argument to be without merit.
"Section 13A-5-47(b), Ala.Code 1975, provides for the use of a presentence investigation report:
"`Before making the sentence determination, the trial court shall order and receive a written presentence investigation report. The report shall contain the information prescribed by law or court rule for felony cases generally and any additional information specified by the trial court. No part of the report shall be kept confidential, and the parties shall have the right to respond to it and to present evidence to the court about any part of the report which is the subject of factual dispute. The report and any evidence submitted in connection with it shall be made part of the record in the case.'
"Section 13A-5-45(d) addresses the evidence to be used at the sentencing hearing:
"`Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is afforded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the State of Alabama.'
"The appellant's argument that the trial court improperly considered the presentence report is without merit. The sentencing order shows that the trial court independently considered and weighed the evidence concerning the aggravating circumstances and the mitigating circumstances; the order does not indicate that the trial court considered any improper evidence in reaching its decision.... In addition, the appellant's argument that the report contained improper hearsay evidence is also without merit. The `report itself is an out-of-court statement and is entirely hearsay. However, it is admissible under § 13A-5-47, Code of Alabama, being specifically called for consideration by the trial court.' Thompson v. State, 503 So.2d 871, 880 (Ala.Cr.App.1986), aff'd, 503 So.2d 887 (Ala.), cert. denied, 484 U.S. 872, 108 S.Ct. 204, 98 L.Ed.2d 155 (1987). Finally, we presume that the trial court disregarded any improper evidence in sentencing the appellant. Sockwell, supra; Lightbourne [v. Dugger, 829 F.2d 1012 (C.A.11 1987)], supra, Whisenhant [v. State, 555 So.2d 219 (Ala.Cr.App. 1988)], supra."
Hyde v. State, 778 So.2d 199 (Ala.Cr.App. 1998) (Footnote omitted). See also Stewart v. State, 730 So.2d 1203, 1221-22 (Ala. *327 Cr.App.1996), aff'd, 730 So.2d 1246 (Ala. 1999).
Therefore, the presentence report was properly admitted and considered by the trial court and no plain error exists on this ground.

XXIX.
The appellant argues that his death sentence is not proportionate to the sentence of others involved in the present crime. The appellant argues that because he is 18 years of age with no prior record or convictions, and because none of the other codefendants received the death penalty, the death sentence was disproportionate in his case. The appellant cites as this specific disparity the fact Lee Williams, who also participated in planning the killing, was sentenced to life in prison; Daniel Minor, who participated in the shooting of the victim, was sentenced to life in prison; and Marcus Carter, who participated in planning to rob the victim, was never charged with any crime. The appellant failed to object on this ground previously; therefore, this issue must be analyzed pursuant to the plain-error rule. Rule 45A, Ala.R.App.P.
"While the sentences received by codefendants must be considered by the Court in determining the appropriateness of a death sentence, they are not controlling." Woodall v. State, 730 So.2d 627, 652 (Ala.Cr.App.1997), aff'd in pertinent part, 730 So.2d 652 (Ala.1998) ("although factors to consider, the facts that Woodall's codefendant John Kennon was not convicted of capital murder, and that Freddie Glenn Pope did not receive the death penalty, do not render Woodall's death sentence disproportionate"). See also Hamm v. State, 564 So.2d 453, 464 (Ala.Cr.App.1989), aff'd, 564 So.2d 469 (Ala.1990) ("although appellant's co-defendant, who was initially charged for the capital offense as well, ultimately received a life sentence for a plea to murder, we are of the opinion that the appellant's sentence of death was none the less appropriate in this case."). See also Arthur v. State, 711 So.2d 1031, 1096 (Ala.Cr.App.1996), aff'd, 711 So.2d 1097 (Ala.1997) ("[T]he fact that two of the appellant's accomplices were not prosecuted does make his death sentence disproportionate. Similarly, although Judy Wicker, an accomplice, received a life sentence while Arthur received a death sentence, there was no disparity, especially because the appellant was the triggerman and was already serving a life sentence for murdering a family member when he killed the victim." Id. at 1096-97. (citations omitted)).
In Burgess v. State, [Ms. CR-94-0475, December 18, 1998] ___ So.2d ___ (Ala. Cr.App.1998), the appellant contended that his death sentence was disproportionate because the State did not prosecute two other people for their involvement in the offense. He further argued that his young age contributed to the need to seriously consider the proportionality of his sentence; he was 16 years of age. The Court extensively discussed the law applicable to this issue as follows:
"In Ex parte Barbour, 673 So.2d 473 (Ala.1995), cert. denied, 518 U.S. 1020, 116 S.Ct. 2556, 135 L.Ed.2d 1074 (1996), the Alabama Supreme Court stated:
"`The legislature, in adopting § 13A-5-53(b)(3)[,Ala. Code 1975], was attempting to follow the mandate of the United States Supreme Court, in Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), that appellate courts examine all death sentences to ascertain "whether the crime was in fact one properly punishable by death, whether similar crimes throughout the state are being punished capitally and whether the sentence *328 of death is appropriate in relation to the particular defendant." Beck v. State, 396 So.2d 645, 664 (Ala. 1980). The United States Supreme Court, in a decision after Gregg, has held that comparative proportionality review is not constitutionally required in every state court death sentence review. Pulley v. Harris, 465 U.S. 37, 43-51, 104 S.Ct. 871, 875-80, 79 L.Ed.2d 29 (1984). In fact, the United States Supreme Court has specifically rejected the claim that a capital defendant can prove an Eighth Amendment violation "by demonstrating that other defendants who may be similarly situated did not receive the death penalty." McCleskey v. Kemp, 481 U.S. 279, at 306-307, 107 S.Ct. 1756 at 1774-75, 95 L.Ed.2d 262 (1987).
"673 So.2d at 474.
"The death penalty is not `inappropriate for one defendant simply because his accomplice is not convicted.' Ex parte Womack, 435 So.2d 766, 769 (Ala.), cert. denied, 464 U.S. 986, 104 S.Ct. 436, 78 L.Ed.2d 367 (1983). The United States Supreme Court has stated:
"`The Constitution is not offended by inconsistency in results based on the objective circumstances of the crime. Numerous legitimate factors may influence the outcome of a trial and a defendant's ultimate sentence, even though they may be irrelevant to his actual guilt. If sufficient evidence to link a suspect to a crime cannot be found, he will not be charged. The capability of the responsible law enforcement agency can vary widely. Also, the strength of the available evidence remains a variable throughout the criminal justice process and may influence a prosecutor's decision to offer a plea bargain or to go to trial. Witness availability, credibility, and memory also influence the results of prosecutions. Finally, sentencing in state courts is generally discretionary, so a defendant's ultimate sentence necessarily will vary according to the judgment of the sentencing authority. The foregoing factors necessarily exist in varying degrees throughout our criminal justice system.'

"McCleskey v. Kemp, 481 U.S. 279, 307, n. 28, 107 S.Ct. 1756, 1775 n. 28, 95 L.Ed.2d 262 (1987).
". . . .
"`... The Supreme Court has stated that discretionary decisions of stat prosecutors to grant immunity to some participants of a crime nd not others is not arbitrary or cruel and unusual under the constitution. See Gregg v. Georgia, 428 U.S. 153, 199, 96 S.Ct. 2909, 2937, 49 L.Ed.2d 859 (1976) (Justices Stewart, Powell, and Stevens); Proffin[Proffitt] v. Florida, 428 U.S. [242] at 254, 96 S.Ct. [2960] at 2967 [49 L.Ed.2d 913 (1976) ].' Palmes v. Wainwright, 725 F.2d 1511, 1524 (11th Cir.), cert. denied, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). Such a contention of disproportionality based on a grant of immunity does not present a "cognizable basis for relief." Id.

"`. . . .
"`Because of "the need for individualized consideration as a constitutional requirement in imposing the death sentence", Lockett v. Ohio, 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973, 990 (1978), the focus must be on the defendant. Enmund v. Florida, 458 U.S. 782, 798, 102 S.Ct. 3368, 3377, 73 L.Ed.2d 1140, 1152 (1982); Williams [v. State], 461 So.2d [834] at 849-50 [Ala.Cr.App.1983], reversed *329 on other grounds, 461 So.2d 852 (Ala.1984).'"
Burgess v. State, supra at ____. This Court, in Burgess, concluded that the absence of prosecution of the accomplices did not "detract from the persuasiveness of the evidence against Burgess" and was not a situation "where a more culpable codefendant received a less severe sentence." Id. at ____. Moreover, as to the appellant's age, this Court in Burgess noted that the trial court clearly considered his age before reaching its sentencing determination. Further, although the appellant was younger than his alleged accomplices, the Court found that his sentence was not disproportionate simply because of his young age.
In the present case, the trial court found the appellant's age to be a statutory mitigating circumstance and considered it as such. It should also be noted that, while the appellant was 18 years old at the time of the offense, Daniel Minor was 16 years old and Lee Edwards was 15 years old. Marcus Carter was 18 years old. Moreover, there is no question that the appellant performed a pivotal role in the planning of the offense and in executing the victim. According to the appellant's prior statement, he unloaded his weapon into the victim when Daniel Minor was unable to commit the murder. "The United States Constitution does not require state appellate courts to compare a defendant's death sentence with sentences imposed in similar case to determine if the death sentence was proportionate. `The Constitution permits qualitative differences in meting out punishment and there is no requirement that two persons convicted of the same offense receive identical sentences.'" McNair v. State, 706 So.2d 828, 844-45 (Ala.Cr.App.1997) (the appellant's death sentence was not disproportionately severe although his codefendant was convicted only of first-degree robbery and was sentenced to life imprisonment). See also Neelley v. State, 494 So.2d 669, 682 (Ala.Cr.App.1985), aff'd, 494 So.2d 697 (Ala.1986), cert. denied, 480 U.S. 926, 107 S.Ct. 1389, 94 L.Ed.2d 702 (1987) (the appellant's death sentence was not disproportionate despite the fact that her husband/accomplice had not been prosecuted for his participation in the victim's murder).
Despite the appellant's age, the sentences of two of his accomplices, and the lack of prosecution of another alleged accomplice, the appellant's sentence was not disproportionate and he was afforded the individualized sentencing to which he was entitled.

XXX.
As required by § 13A-5-53, Ala. Code 1975, we address the propriety of the appellant's conviction and sentence of death. The appellant was indicted and convicted of capital murder, see § 13A-5-40(a)(2), Ala.Code 1975, for intentionally causing the death of Edward Lee Williams during robbery in the first degree.
The record reflects that the appellant's sentence was not imposed under the influence of passion, prejudice, or any other arbitrary factor. See § 13A-5-53(b)(1), Ala.Code 1975.
A review of the record shows that the trial court correctly found the existence of one aggravating circumstance: that the capital offense was committed while the appellant was engaged in the commission of or the attempt to commit or flight after committing or attempting to commit robbery in the first degree. § 13A-5-49(4). The trial court correctly found the existence of two statutory mitigating circumstances: that the appellant had no significant history of prior criminal activity, and that the appellant was 18 years old at the time of the offense. The trial court also *330 correctly found the existence of certain nonstatutory mitigating circumstances: a difficult childhood following the divorce of his parents, a good reputation, and a substantially good record for a person of his age. The trial court weighed the mitigating and aggravating circumstances and properly determined that the aggravating circumstance outweighed the statutory mitigating circumstances and nonstatutory mitigating circumstances. We agree with the trial court's findings.
As required by § 13A-5-53(b)(2), Ala. Code 1975, this Court must independently weigh the aggravating and mitigating circumstances to determine the propriety of the appellant's death sentence. After an independent weighing of those circumstances, this Court is convinced that the appellant's sentence of death is the appropriate sentence.
Pursuant to § 13A-5-53(b)(3), Ala.Code 1975, this Court must address whether the appellant's sentence was disproportionate or excessive when compared to sentences imposed in similar cases. The appellant's sentence was neither. See Burgess v. State, [Ms. CR-94-0475, December 18, 1998] ___ So.2d ___ (Ala.Cr.App.1998); Hardy v. State, [Ms. CR-95-0589, March 26, 1999] ___ So.2d ___ (Ala.Cr.App. 1999); Melson v. State, 775 So.2d 857 (Ala. Cr.App.1999); Price v. State, 725 So.2d 1003 (Ala.Cr.App.1997), aff'd, 725 So.2d 1063 (Ala.1998); Kuenzel v. State, 577 So.2d 474 (Ala.Cr.App.1990), aff'd, 577 So.2d 531 (Ala.), cert. denied, 502 U.S. 886, 112 S.Ct. 242, 116 L.Ed.2d 197 (1991). In fact, two-thirds of the death sentences imposed in Alabama involve cases of robbery/murder. Beck v. State, 396 So.2d 645, 654 n. 5 (Ala.1980).
We have searched the entire record for any error that might have adversely affected the appellant's substantial rights and have found none. Rule 45A, Ala.R.App.P.
The judgment of the circuit court is due to be, and it is hereby, affirmed.
AFFIRMED.
LONG, P.J., and COBB, BASCHAB, and FRY, JJ., concur.
NOTES
[1] His objection at one point implied that he had learned of the videotape one day before its admission; another objection to its admission alleged that he had learned of it two days before its admission.